LOWMAN ET AL. *v.* LOWMAN

[No. 16,619.   Filed May 5, 1941.]

*Donald Vanderveer* and *Allan S. Widaman,* both of Warsaw, for appellants.

*Brubaker & Rockhill* and *Ezra W. Graham,* all of Warsaw, for appellee.

BEDWELL, J.—This is a second appeal of this cause to this court. The former appeal was determined by this

court on February 16, 1938 and the court's opinion is reported in *Lowman* v. *Lowman,* 105 Ind. App. 102, 12 N. E. (2d) 961. In the former appeal, Henry Clayton Lowman, the appellee in this appeal, was appellant, and Samuel M. Lowman and Thelma F. Lowman, the appellants in this appeal, were appellees.

The only error assigned and relied upon for reversal in the former appeal, was error of the trial court in sustaining demurrers to the amended complaint of Henry Clayton Lowman. This amended complaint was in two paragraphs, and by the same, the appellee herein, Henry Clayton Lowman, sought to recover from the appellants herein, Samuel M. Lowman and Thelma F. Lowman, money and property advanced by appellee to appellants to enable appellants to acquire title to certain real estate. By such complaint the appellee alleged that he had entered into an oral contract with appellants, under the terms of which, for the money so advanced, they were to provide him with a home, board, lodging, clothing, and medical care, and surgical attention for the remainder of his life, and at his death, to give his body a decent burial. Appellee sought a rescission and cancellation of such oral contract, to have a vendor's lien declared upon the real estate purchased by appellants with the money advanced by him, and for a foreclosure of such lien, and an order for the sale of the real estate to satisfy the amount due appellee.

By its former opinion this court held that appellee's amended complaint, in two paragraphs, stated a good cause of action against both of the appellants; and the cause was remanded to the lower court with instructions to overrule the demurrer to each paragraph of the amended complaint and for further proceedings not inconsistent with such opinion.

After the remanding of the cause, appellants filed answer in general denial to appellee's amended complaint; and the cause was submitted to the court for trial without the intervention of a jury. Upon the conclusion of the trial, the court found for appellee and against both appellants; that appellee was entitled to have his contract with the appellant Samuel M. Lowman, as set out in the complaint, rescinded and cancelled and to recover from him the sum of three thousand sixty-two dollars and forty-seven cents ($3,062.47) and to have returned to him, by the appellant Samuel M. Lowman, the personal property described in the complaint. The trial court further found that such sum of three thousand sixty-two dollars and forty-seven cents ($3,062.47) constituted a part of the purchase price for the real estate described in the complaint and that such real estate in the hands of both appellants was subject to a lien in favor of appellee for said sum. Upon such finding, the trial court rendered judgment against the appellant Samuel M. Lowman for three thousand sixty-two dollars and forty-seven cents ($3,062.47) and rescinded and cancelled the contract set out in the complaint and ordered the return of household goods, automobile, farm implements, and utensils; but ordered that execution first be issued against the property of appellant Samuel M. Lowman, and in the event of a deficiency of proceeds realized therefrom to satisfy such judgment, that the real estate described in such complaint be sold by the sheriff to make proceeds for the payment thereof.

After the making of such finding and rendition of such judgment, appellants filed timely motion for a new trial, which was overruled by the trial court; and the only error relied upon by appellants is that the trial court erred in overruling appellants' motion for a new trial.

The only grounds specified in appellants' motion for a new trial are:

1. That the decision of the court is not sustained by sufficient evidence.

2. That the decision of the court is contrary to law.

The only question presented is whether there is substantial evidence in the record which fairly tends to establish all the material issues made by the amended complaint and the answer of general denial thereto. No amendments were made to the amended complaint after the former appeal; and the prior holding of this court, that each of the paragraphs of such amended complaint stated a good cause of action against each of the appellants herein, remains the law of this cause and must be adhered to by the trial court and this court on this or any subsequent appeal. *Lillie* v. *Trentman* (1891), 130 Ind. 16, 29 N. E. 405; *James* v. *The Lake Erie and Western Railway Co.* (1897), 148 Ind. 615, 48 N. E. 222; *South Bend Home Telephone Co.* v. *Beaning* (1914), 181 Ind. 586, 105 N. E. 52.

Under the rules repeatedly laid down by this and the Supreme Court, it is our duty to determine whether there is evidence in the record to sustain the finding of the trial court; and when there is conflicting evidence, even in equity cases, this court will not determine the credibility of witnesses, nor will it weigh or determine the probative force of conflicting evidence to determine where the preponderance lies. It will only determine whether there is substantial evidence which fairly tends to establish all the material issues and to sustain the decision. *Smith* v. *Hill* (1929), 200 Ind. 616, 620, 165 N. E. 911, 912; *Carpenter* v. *Carpenter* (1940), 108 Ind. App. 221, 27 N. E. (2d) 889

From an examination of the record, the following facts are elicited:

In the year 1928, the appellee, who was then seventy-one (71) years of age, lived with the appellants in the city of Warsaw. Appellant Samuel M. Lowman was employed as manager of stores at Warsaw and Akron, Indiana, of Bashore Feed Stores & Hatcheries, and appellee spent some of his time helping his son Samuel M. Lowman in the work about the store at Warsaw. Appellee had been twice married; and during his marriage with his second wife, Alice Lowman, the real estate here in question, which was owned by appellee individually, was deeded so that a tenancy by the entireties was created between appellee and his second wife, Alice Lowman. She filed a divorce action against appellee; and upon rendition of the divorce decree, appellee and Alice Lowman each became the owners of an undivided one-half of such real estate as tenants in common. Subsequently, Alice Lowman instituted partition proceedings against appellee, and the real estate was declared indivisible and ordered sold, and commissioners were appointed to make sale thereof. These proceedings were pending during the latter part of the year 1928, and in the beginning of 1929.

Prior to 1929, the appellee had given his son Samuel M. Lowman eight hundred seventy-eight dollars ($878), and when he gave him a part of the money he told him that it was money that he was saving because he was expecting to have to go to the hospital and that he was saving the money to pay his hospital and doctor bill and to bury him.

The real estate which had been ordered sold had originally been appraised for five thousand dollars ($5,000), but no bid had been received therefor at such price. Early in the year 1929, the appellee sug-

gested to appellant Samuel M. Lowman, that he buy this farm, and told Samuel that if he would buy it he would let him use the money which Samuel had that belonged to appellee, and that he would apply his distributive share from the sale in the partition proceedings. Appellee offered to furnish such funds in consideration of the appellant Samuel M. Lowman furnishing him a home and support and maintenance during the rest of his life and a decent burial. Appellant Samuel M. Lowman agreed to purchase the farm under such circumstances; and on March 6, 1929, did buy the land for forty-five hundred dollars ($4,500). The distributive share of appellee from the partition proceedings was one thousand four hundred eighty-four dollars and seventy-six cents ($1,484.76) and this was applied as a payment upon the purchase price. Title to the land was taken in the name of both appellants herein, the appellant Thelma F. Lowman having full knowledge of the transaction.

Following the purchase of the land, appellants and appellee moved on to the same in the early spring of 1929, and they all lived there until appellee went to the hospital at Warsaw on May 14, 1930. During such period appellee did some work about the farm, tending the truck patch, mowing weeds, shucking corn, hauling wood, and work of this nature; but during the fall after he went there, his health became poor and he was suffering from bladder trouble caused by the growth of a tumor, which prevented urination. This condition grew worse and appellee made frequent trips to a doctor's office for catheterization. His condition did not improve and he was informed by physicians at Warsaw that an operation was necessary. Appellant Samuel M. Lowman told him to, "Go to some other doctor. Don't go back up there to Warsaw to them doctors.

All they know is to cut people to pieces." Appellee went to another doctor who furnished him with medicine but told him that nothing would do him any good but an operation. He was compelled to go to a doctor twice a day for catheterization.

This condition continued until appellee went to the hospital at Warsaw for an operation on May 14, 1930. He told appellant Samuel M. Lowman, that the doctors had advised him that such was the only thing that would do him any good; but Samuel M. Lowman did not want him to go. About a week later, appellee prepared to go to the hospital. Appellant Samuel M. Lowman refused to take him and appellee then prepared to walk. He was suffering great pain; he could not sleep; he got up at 2 o'clock in the morning and walked the driveway till daylight; and on that particular morning the appellant Thelma F. Lowman telephoned to Wilbur Lowman, another son of appellee, to come and get him and take him to the hospital. Wilbur took appellee to the hospital at Warsaw where he was operated.

Appellee remained in the hospital until June 29, 1930; he was there six (6) weeks and four (4) days. While he was there, the appellant Samuel M. Lowman visited him twice. A few days before he was taken away he sent for Samuel M. Lowman to take him from the hospital, but Samuel M. Lowman didn't come until two (2) days later. Appellee asked him to make arrangements about his hospital and doctor bills and to take him away; but appellant Samuel M. Lowman refused, stating that he didn't have the money; and he refused to see the doctor or make arrangements to pay the hospital bill, but walked away and left appellee at the hospital. The day following this occurrence, appellee had a nervous breakdown; couldn't eat or sleep; and worried exceedingly because he didn't know how

he was going to get away from the hospital. Appellee remained in the hospital four days after his discharge; and on the fourth day, which was Sunday, his son Wilbur came and took him to his home.

While he was at the home of Wilbur, the appellant Samuel M. Lowman came to Wilbur Lowman's home where appellee was lying on the porch, on a lounge. Appellee called to Samuel M. Lowman and said to him, "Ain't you going to make arrangements to take me out of here?" Samuel M. Lowman answered, "no." Appellee then got off the lounge and went to a room and held a conversation with Samuel M. Lowman concerning the hospital bills. Samuel M. Lowman gave him a check for fifty dollars ($50), telling him that was all the money he had. Appellee applied this fifty dollars ($50) on his hospital bill. He remained at the home of Wilbur Lowman for three (3) or four (4) months and then went to the County Poor Farm where he continued to live until the time of the trial. Appellee did not live with appellants after he went to the hospital, and received no support or payment from appellants after the fifty dollars ($50) was paid at the home of Wilbur Lowman.

Prior to the time that appellee went to the hospital, and while he was living with appellants, he testified that their treatment of him was all right for a while, but that when he got so he couldn't work it was "no good." He then recounts certain instances that happened at the home,—when he says his daughter-in-law, Thelma F. Lowman, "bawled him out" for getting a chair close to the stove; when she objected to his using the telephone, and, also, recounts an instance when they gave him medicine to drink and his son Sam told him that his breath was so bad they could hardly eat. Appellee then suggested that he would remain away from the

table until they got through. Appellee also, in his testimony, tells of an instance when his son Sam came home about 6:30 o'clock in the evening and he asked him to take him to the doctor. This resulted in a quarrel, and appellee told his son Samuel, that if he couldn't get to the doctor without a family row, that he would walk. He started to walk, but his son Samuel got the car and came after him and took him to the doctor. Appellee states, in his testimony, that the attitude of his son Samuel and his wife was kind and courteous until he got sick, but that after he got sick, "it wasn't no good. . . . they didn't countenance me like they did before that; didn't have anything to say to me." He further testified that they would not talk with him, and that after he quit work he sat in the kitchen out of the way, and that this treatment continued until he went to the hospital. Appellee further testified that treatment by appellants caused him worry and that living there became unbearable to a certain extent. Appellee further testified that Samuel refused to take him home while he was at the hospital and on the Sunday evening after he had left the hospital and was at the home of his son Wilbur; that after he went to the County Farm appellants never came there; and that more than two (2) years passed before Samuel M. Lowman offered to take him to his home; that he had never told Samuel M. Lowman that he would not go home with him; that he went to the County Farm because he had no place else to go; that nobody told him to go to the County Farm; that he didn't want to go to the County Farm but that he, "didn't infringe upon anybody"; that the Couny Farm was not where he wanted to stay, but that he had to have a home; that he was seventy (70) odd years old.

Wilbur Lowman testified that he had a conversation with his brother Samuel M. Lowman over the telephone; that he called Sam up and asked him to come to the hospital and get dad; that Sam said, "I didn't take him there and I am not going to go after him."

Up to the time of the trial, the hospital and doctor bills were never fully paid and no payment was made thereon except the fifty dollar ($50) payment by Samuel M. Lowman heretofore described.

Appellants attack the sufficiency of the evidence to sustain the decision of the court upon these grounds:

1. That any failure of the appellants to perform the contract was not substantial and in relation to material matters.

2. That the evidence showed that appellee had abandoned the contract and had prevented further performance by appellants.

3. That although appellee has pleaded willingness that the appellant Samuel M. Lowman be compensated for the services he had rendered the appellee, the appellee has not pleaded or proven the value of such services.

In considering these objections, it is well to keep in mind the well-established rule that this court, on appeal, where there is conflict in oral testimony, does not weigh the evidence or determine the credibility of witnesses. Even in equity cases, the decision of the trial court is conclusive on all questions of the weight of conflicting evidence and the credibility of witnesses. *Town of St. John* v. *Gerlach* (1926), 197 Ind. 289, 294, 150 N. E. 771.

While there is conflict in the evidence and the trial court might have determined that the appellee abandoned the contract, there exists substantial evidence from which the trial court could determine that the appellant Samuel M. Lowman abandoned

the contract and by his actions evidenced an intention not to take further steps for the support and care of his father and the payment for medical and hospital service that was necessary. Such construction could reasonably have been placed upon the testimony of the appellee when he testified that his son Samuel refused to take him home from the hospital and refused to take him home from the residence of Wilbur Lowman, and that he refused to talk to the authorities at the hospital and the doctor, and make arrangements for the payment of his hospital and doctor bills.

The evidence of one witness, even though a party, may, and often ought to have, more weight in the proper decision of the cause than the testimony of a dozen adverse witnesses. *Johnson* v. *Holliday* (1891), 79 Ind. 151, 154.

Only the trial court sees the witnesses on the stand, their demeanor in testifying, their candor, or lack of candor, in disclosing facts about which they have knowledge. Juries and trial courts, quite often, properly, give more weight to the demeanor of witnesses than to the substance of their statements in the determination of truth. An appellate court, considering only the statements, is denied the assistance of this necessary factor.

In the case of *Mills* v. *Thomas* (1924), 194 Ind. 648, on p. 655, 144 N. E. 412, 414, the Supreme Court of this state says:

"Appellants contend that the evidence is conflicting, uncertain and doubtful on several material matters which the appellee had the burden of establishing and this being an equity case, the court should weigh the evidence to determine whether it is sufficient to sustain the decision, and cite § 698 Burns' 1914, Acts 1913, p. 338. This statute has been construed by this court as not authorizing us to determine where the preponderance lies in con-

flicting oral testimony, and if there is evidence which fairly supports the decision below, we cannot disturb it on the evidence. *Parkison* v. *Thompson* (1905), 164 Ind. 609; 3 Ann. Cas. 677; *Mannos* v. *Bishop-Babcock-Becker Co.* (1914), 181 Ind. 343."

Appellants contend that the burden of proof was upon appellee to prove not only breach of contract but also the equity to which appellee was entitled, and that it was necessary for appellee to introduce proof concerning the value of the services that had been rendered appellee by appellants under the contract. In their brief, appellants say, "He has wholly failed either to show what he owed, and did not even allege any indebtedness in his complaint. The offer to do equity is proper enough, but the burden goes further and requires him to in some manner show what his equity is or to establish the facts from which a court can determine his equity and take it into accounting in moulding its decree and judgment." Appellants are in no position to raise any question concerning any lack of allegations in the complaint. Upon the prior appeal of this cause, this court held that the complaint stated a good cause of action against both of the appellants.

This court in the case of *Laub-Zink Furniture Co.* v. *Ferris* (1922), 78 Ind. App. 290, 291, 135 N. E. 374, says:

"This court on the former appeal held the complaint was sufficient to withstand the demurrer, but that appellee had failed in his proof and reversed the cause for that reason. The complaint having been held good on the former appeal, we are bound by that decision, although it is proper to call attention to *Cleveland, etc., R. Co.* v. *Ropp* (1921), 190 Ind. 115, 129 N. E. 475, where the Supreme Court held that § 4 of the 'Dangerous Occupation Act' (Acts 1911, p. 597, § 3862d Burns'

1914), that being the section under which this action is founded, does no more than declare the common law and has no effect in determining liability. Were it not for the fact that we are bound by the former opinion as the law of the case we would probably be compelled to hold that the complaint failed to state a cause of action. But since the complaint has been held good, it is now only necessary for us to determine whether the facts alleged in the complaint have been proven."

In the case of *Lillie* v. *Trentman* ·(1891), 130 Ind. 16, 17, 29 N.E. 405, the Supreme Court says:

"The principles of law established on the former appeal, so far as applicable, remain the law of this case through all of its subsequent stages, and must be adhered to, whether right or wrong, not only in the trial court, but in this court, on a second, or any subsequent appeal."

And, further:

"Where the sufficiency of a pleading has been passed upon by this court, that ruling will be· adhered to on a second appeal, unless the same has been amended so as to materially change its character."

The appellee did not allege in his complaint that there was any sum due appellant Samuel M. Lowman for services he had rendered appellee. He alleged that he was ready and willing that appellant be compensated out of appellee's property in the possession of the appellants for the services appellant Samuel M. Lowman had rendered to appellee under the contract up to the time of the repudiation thereof by the appellant Samuel M. Lowman and that the appellee could not offer to pay Samuel M. Lowman therefor for the reason that the appellee had assigned, set over, delivered and turned over to said appellant all his property of any kind and character and that the appellants retained possession thereof. This complaint having been held good by this court on prior appeal,

there is no burden upon the appellee to make proof of matters not alleged in the complaint.

In appellee's complaint, he asked the court to allow Samuel M. Lowman, out of appellee's property, in his possession, the reasonable value of services that Samuel M. Lowman had rendered to appellee.

Such allegation did not place upon appellee any burden to prove the extent or value of such services.

In the case of *Brannon* v. *Hayes, Admr.* (1921), 190 Ind. 420, 429, 130 N. E. 803, 806, where the appellee, an administrator, sought to rescind his decedent's contract on the ground of her mental incapacity, the court says:

> "It is true this was a suit in equity, and governed by equitable principles which gave the court a wide discretion in the matter of adjusting and protecting the rights of the parties, but as we are at present advised, we know of no rule or principle applicable to the facts before us which would place the burden on appellee to come forward with proof whereby the court would be furnished a basis on which to make allowances to appellants for services and for money expended by them out of funds for which they should otherwise account to appellee."

In the case of *Long* v. *Harrison* (1922), 134 Va. 424, 448, 114 S. E. 656, 663, where an action to cancel judgments for fraud was sustained and the matter was referred to a master to determine the actual consideration furnished to the plaintiff, the court says:

> "But on such reference, upon the principles above alluded to, the defendants should bear the burden of proof of the actual consideration which was furnished to young Long for the notes on which the judgments were entered, . . ."

We hold that in this cause the burden was upon the appellants to prove the extent of or the value of any services that had been rendered the appellee under the contract.

Under their "Propositions and Authorities" appellants do not specify any particular in which the decision of the trial court was contrary to law and this ground for a new trial is waived.

The death of appellee herein, after the submission of this cause in this court, has been suggested; and the judgment is therefore affirmed as at the term at which submission was made. § 2-3235, Burns' 1933, § 510, Baldwin's 1934.

NOTE.—Reported in 33 N. E. (2d) 780.