Theodore HAMMER, Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00–8809–PC–00856.

Supreme Court of Indiana.

Oct. 18, 1989.

Susan K. Carpenter, Public Defender and Margaret Hills, Sp. Asst. Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Petitioner Hammer appeals denial of post-conviction relief from the Vanderburgh Superior Court. This is Hammer's second post-conviction relief petition. He was convicted of Armed Robbery and Kidnapping in 1975 and was sentenced to a term of ten (10) years for the robbery conviction and a concurrent life term for the kidnapping conviction. His conviction was affirmed by this Court in *Hammer v. State* (1976), 265 Ind. 311, 354 N.E.2d 170. In 1976, Hammer filed his first petition for post-conviction relief. This petition was de-

nied and this Court affirmed the denial of post-conviction relief in 1978. *Hammer v. State*, 268 Ind. 605, 377 N.E.2d 638, *cert. denied* (1978), 439 U.S. 969, 99 S.Ct. 462, 58 L.Ed.2d 429. Hammer then filed a *pro se* petition for post-conviction relief in 1984, but he withdrew this *pro se* petition and subsequently refiled it, raising the same issues on December 16, 1986. On April 14, 1988, the Vanderburgh Superior Court denied relief and Hammer appeals the judgment of denial.

The only issue raised in this second petition is denial of due process based on Hammer's contention that he was incompetent to stand trial at his original trial in 1975.

At the hearing on his petition for post-conviction relief, the trial court found that Hammer was competent to stand trial in that he understood the nature of the proceedings and was able to assist his attorney in the trial. The court further found in favor of the State on its affirmative defense of laches, finding there was ample evidence presented that Hammer was aware of his post-conviction remedies but unduly delayed in bringing them and that the State was prejudiced because its witnesses were no longer available to testify on this issue.

■ In its brief, the State raises the issue of waiver, alleging the present argument is one that could have been raised in his original appeal and in his first post-conviction relief petition. However, waiver was not raised at trial and the trial court did not find a waiver to have occurred. Instead, it resolved the case on the merits of the competency issue. Therefore, we cannot base our decision on the waiver principle. *Young v. State* (1986), Ind., 500 N.E.2d 735, 736. Furthermore, this Court has clearly established that waiver is an inapposite concept in a competency situation. *Smith v. State* (1983), Ind., 443 N.E.2d 1187, 1188; *Evans v. State* (1973), 261 Ind. 148, 158, 300 N.E.2d 882, 887; *Tinsley v. State* (1973), 260 Ind. 577, 582, 298 N.E.2d 429, 432; *see also Pate v. Robinson* (1966), 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815, 821.

This cause presents the same circumstances confronted by this Court in *Evans, supra*, and *Tinsley, supra*, in that no question was raised at trial by any party regarding appellant's competency. The record here does not indicate any actions by Hammer which would have aroused the trial judge's suspicions of his incompetency at trial requiring further inquiry.

In *Tinsley*, there was nothing in the record that could be considered an indicator to the trial judge concerning Tinsley's competency. In his belated motion to correct error filed under Ind.R.P.C. 2 and presented on appeal to this Court, Tinsley filed a copy of a Marion Probate Court judgment and order of April, 1956, in which a guardian was appointed for Tinsley because he was found to be incapable of managing his estate due to mental illness. This Court found the probate court's judgment to be cause to question Tinsley's competency, finding that the test for appointment of a guardian in Indiana is whether the defendant's mental impairment renders him incapable of understanding and acting with discretion in the ordinary business affairs of life. 260 Ind. at 589, 298 N.E.2d at 433. This is very similar to the test of mental condition used to determine whether a criminal defendant has sufficient mental ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational and factual understanding of the proceedings against him. Tinsley's appeal was ordered held in abeyance and the cause was remanded for a hearing to determine whether Tinsley was competent to stand trial in 1971, such hearing to be held in compliance with the procedures set out in the statute applicable at that time, Burns § 9–1706(a), and the trial court was ordered to certify its determination following such hearing. The trial court held such a hearing, certified it to this Court and disposition was finally made. *Tinsley v. State* (1974), 262 Ind. 141, 312 N.E.2d 72. The trial court appointed two psychiatrists to examine Tinsley, heard all other evidence offered by the parties, and determined Tinsley was competent at the time of his trial.

In *Evans,* though no indicators appeared at trial, evidence was produced showing that when Evans arrived at the Indiana State Prison on May 8, 1959, the interviewing counselor found it impossible to follow the regular procedure of interviewing Evans because he was so disturbed. For this reason, the counselor recommended a psychiatric examination. Examination by a physician found Evans to be overtly psychotic and suffering from both hallucinations and distortions of reality. He was transferred to Norman Beatty Hospital and remained there until March, 1963. 261 Ind. at 158, 300 N.E.2d at 887. Again, the appeal was held in abeyance and the cause remanded to the trial court to conduct a hearing into Evans' competency during trial. On remand, the trial court conducted such a hearing by appointing two psychiatrists who testified at the hearing. The court also heard other evidence presented by the parties and determined Evans was competent at the time he was tried. Its judgment was affirmed by this Court. *Evans v. State* (1974), 262 Ind. 162, 313 N.E.2d 345.

In *Smith, supra,* the trial court did conduct a hearing as to Smith's competence, but this Court held the trial court did not follow proper procedures in arriving at its judgment that Smith was competent at the time of trial. This Court found that the only source of expert testimony from psychiatrists came when the trial court took judicial notice of reports filed in another criminal cause involving Smith in which a psychiatrist found him competent. This Court found those reports were improperly admitted and there was, therefore, no psychiatric testimony properly admitted at the hearing to aid the court in making its determination. This Court thus found that the trial court had ignored the statutory requirements in that no psychiatrists were appointed in the case to examine Smith. Judgment was held in abeyance and the cause was remanded to the trial court to appoint a psychiatrist as the statute required and conduct a hearing on the question of competency which was to be certified to this Court for a final determination. 443 N.E.2d at 1189–91. The trial court did

so and on certification this Court affirmed the finding of Smith's competency following a proper hearing. *Smith v. State* (1983), Ind., 454 N.E.2d 412.

Our present statute, Ind.Code § 35–36–3–1 (formerly Ind.Code § 35–5–3.1–1), requires a trial court, upon having reasonable ground for believing a defendant incompetent, to appoint two disinterested physicians to examine the defendant. The court must then conduct a hearing to receive the testimony of the expert psychiatric witnesses along with any other evidence offered by the parties.

In the present cause, the trial court conducted a hearing to determine Hammer's competency at time of trial. The court did not, however, appoint a psychiatrist as required by the statute and no expert testimony was heard. He determined that the only factual issues raised by Hammer concerned the consumption of drugs administered to him which made him incapable of understanding the proceedings and cooperating with his lawyer. Hammer testified that he searched for a vehicle to get back into court, that he had been advised by everyone that he had no chance to overturn his conviction and sentence, and, with the aid of one of the lay prison lawyers, came upon the idea of attacking it on this issue. He contacted Marion Flewallen and James Goodwin who supported his testimony that he was administered at least four different kinds of drugs every day during the time of his trial and took all of these drugs three or four times a day. Inferences questioning the credibility of these two witnesses concerning their memory of the drugs administered and the frequency of dosages were justified. Hammer's testimony further revealed that he was able to remember what evidence was before the trial court because the State presented only two major witnesses and very little other evidence. He was able to recall their testimony and, further, referred to other issues he had discussed with his attorney during the trial. For instance, he wanted to waive a jury trial and be tried by the judge because he thought he had a better chance convincing one person than he did twelve

jurors, a judge, and a prosecutor. He said he argued at length with his lawyer about this strategy but his lawyer overruled him and opted for a jury trial. There were other issues he discussed with his attorney about calling witnesses and generally participating in the trial. He did say he had difficulty understanding what was going on at certain points in the trial but, under cross-examination, admitted he was young at that time, had never experienced a jury trial before, and did not know how they were conducted. For instance, he stated he did not know certain prospective jurors could be excused and new ones put on, and he had difficulty understanding this procedure until his lawyer explained it to him. As the trier of fact, the trial judge had the responsibility to weigh this evidence and judge its credibility, and the facts support his determination up to this point. However, the evidence further showed that the doctor who administered drugs to prisoners at the jail at the time of this trial had no recollection of having treated Hammer and retained no records concerning what medicines were prescribed for him. Personnel at the jail had no recollection and no records remaining as to what medication was given Hammer and what effect it had on him.

The trial court found that because of the total lack of evidence concerning the medication given to Hammer at the time of trial, the State was prejudiced by Hammer's delay in bringing this second post-conviction relief petition and found in favor of the State on its affirmative defense of laches. This finding does not support the trial court's judgment because no psychiatrists were appointed to review any of the medical evidence, including the dosage and effect of the drugs allegedly taken by Hammer. A report which had been included in the presentence report at the time Hammer was sentenced was submitted into evidence. The report was made by a psychiatrist who examined Hammer while he was detained at a youth center in California at the time of his extradition to face the charges on which this case is based. The psychiatrist referred to the long history of Hammer's psychological problems which still existed at the time of his retention at the center and concluded by saying that progress was being made but that extradition to Indiana was not advisable in his opinion. An affidavit was also filed by a man who had had a long relationship with Hammer as a foster father, which indicated psychological problems during Hammer's lifetime. He stated he had visited Hammer twice in the Evansville Jail at the time of trial and found him to be so disoriented that he was unable to discuss Hammer's situation with him. When Hammer was committed to the Department of Corrections, he was found at that time to be oriented and not suffering from psychological problems. Within a couple of years, he had a great many problems, was at one time diagnosed as schizophrenic and spent a great deal of time in the psychiatric ward.

The burden is on Hammer as a post-conviction relief petitioner to show the relief he seeks is supported by a preponderance of the evidence. It is the responsibility of the trial court to make an assessment of the credibility of the witnesses and the weight to be given to the evidence presented. This Court will not lightly set aside that judgment. Only a strong showing that all of the evidence indicates the direction opposite that in which the trial court went would justify our doing so. There were sufficient facts and inferences before the trial court to make the assessment he did of the evidence he heard. However, he did not hear an appraisal of the facts and circumstances by a competent psychiatrist as the statute requires. Accordingly, this appeal is ordered held in abeyance and this cause is remanded to the trial court to reopen the hearing and hear further evidence in compliance with the statutes. The trial court is further instructed to certify its determination following such a hearing to this Court for a final disposition of this appeal.

DeBRULER, GIVAN and DICKSON, JJ., concur.

SHEPARD, C.J., dissents with separate opinion.

SHEPARD, Chief Justice, dissenting.

I think the majority's remand of this case is very unlikely to generate any information that will be useful. As I understand it, the trial court is being directed to appoint two psychiatrists whose job will be to examine the defendant in 1989 to determine his competency for a trial held in 1975. In light of the apparent lack of reliable information about whether he was on medication at the time of trial, I do not see how much can be said fourteen years later about defendant's condition at the time. Hammer could have raised this question on direct appeal and he could have raised it in his first post-conviction proceeding. The trial court in this second post-conviction proceeding found laches, and I would affirm its judgment.