RICHARD LEE SCHUMAN *v.* STATE OF INDIANA.

[No. 175S11. Filed December 9, 1976.]

*W. Henry Walker,* of East Chicago, for appellant.

*Theodore L. Sendak,* Attorney General, *David Lee Pflum,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Richard Lee Schuman, was indicted on September 13, 1967, for the killing of his wife on September 7, 1967. The indictment contained counts of first degree murder, second degree murder, and voluntary manslaughter. On November 1, 1967, the Appellant entered pleas of not guilty to all three counts. After several continuances, the Appellant was rearraigned on July 1, 1968, and changed his pleas to guilty of murder in the second degree. This plea was accepted by the trial court and the Appellant was subsequently sentenced to life imprisonment.

On January 22, 1970, the Appellant filed a petition for postconviction relief. After a number of continuances chargeable to the Appellant, the hearing of evidence on this petition was concluded on June 5, 1974. The petition was denied on July 24, 1974. On January 15, 1975, this court granted permission to file a belated appeal in this cause when the transcript

of the Appellant's post-conviction remedy proceeding was not filed in a timely fashion.

The central contention of the Appellant is that the trial court erred in accepting the Appellant's guilty plea without first determining his competency to stand trial and enter his plea. It is conceded that the Appellant did not formally bring the question of his competency to stand trial to the attention of the trial court. It is asserted, however, that there was sufficient evidence before the trial court to give it reason to conduct a competency hearing *sua sponte.* We agree that a competency hearing should have been held in this case. We do not, however, think that a new trial must be granted.

The Appellant's argument is based upon Ind. Code § 35-5-3-2, Burns § 9-1706a (since repealed), which reads in part:

> *"Commitment before trial—Subsequent actions*—When at any time before the trial of any criminal cause or during the progress thereof and before the final submission of the cause to the court or jury trying the same, the court, either from his own knowledge or upon the suggestion of any person, has reasonable ground for believing the defendant to be insane, he shall immediately fix a time for a hearing to determine the question of the defendant's sanity and shall appoint two [2] competent disinterested physicians who shall examine the defendant upon the question of his sanity and testify concerning the same at the hearing. At the hearing, other evidence may be introduced to prove the defendant's sanity or insanity. * * *"

While the defendant in this case entered a plea of guilty and therfore did not go to trial, we think that this statute is applicable here. The duty imposed upon a trial court here arises if "at any time before the trial of any criminal cause" the trial court has "reasonable ground for believing the defendant to be insane." When the circumstances of a case bring this statutory duty to hold a competency hearing into being, a subsequent guilty plea does not dispel it. Indeed, the presence of a "reasonable ground for believing the defendant to be insane" would seem to indi-

cate that such a competency hearing is necessary before any guilty plea can be accepted.

This case bears a marked similarity to *Morris* v. *State*, (1975) 263 Ind. 370, 332 N.E.2d 90, in which we reversed the second degree murder conviction of a defendant who had filed a motion asking that he be submitted to examination by "qualified and authorized doctors of mental diseases" to determine whether he was legally insane at the time of the crime. We looked at this motion in the light of Ind. Code § 35-5-3.1-1 (Burns 1975), which substantially recodifies the portion of Ind. Code § 35-5-3-2 quoted above. While the defendant in *Morris* had not filed a written plea of insanity, which would have resulted in the appointment of two physicians to examine the defendant, it was the opinion of this court that action by the trial court was required:

> "Thus, notwithstanding the Appellant's failure to plead according to IC 1971, 35-5-2-1, we think that Appellant's 'Motion' contained sufficient matter to come within IC 1971, 35-5-3.1-1, and to put the trial court on notice that it was presented with a situation involving a defendant's mental condition. Titling a document a 'Motion' does not make it one. We should look to the substance rather than merely the form of a document. Especially considering the gravity of the charge against this defendant, the trial judge, after having seen the 'Motion', should have discovered (1) whether the defendant intended this 'Motion' as the written plea of not guilty by reason of insanity required by statute or whether the defendant now wished to plead not guilty by reason of insanity; and, (2) whether or not Defendant was competent to stand trial. Since it appears that at this late date the question of Appellant's competency to stand trial cannot be retrospectively determined, there must be a new trial. *Pate* v. *Robinson*, (1966) 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; *Dusky* v. *United States*, (1960) 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824."

*Morris* v. *State*, supra at 92.

In this case, the Appellant neither entered a plea of not guilty by reason of insanity nor raised any question regarding his competency to stand trial. He did, however, request and receive three separate continuances based on the need

for "further time to complete medical tests now in process and necessary for his defense." Sandwiched between the first and second continuances was the granting of a Petition for Medical Examination which authorized the transfer of the Appellant to South Bend for psychiatric examinations. A delay of some five months can be directly attributed to these efforts to explore the legal sanity of the Appellant.

It seems clear, then, that the trial court was "on notice that it was presented with a situation involving a defendant's mental condition." The record in this case does not reveal that the trial court received a report of the results of the Appellant's psychiatric examinations, which might have removed the reasonable ground for believing the Appellant to be insane or incompetent. *See Brown* v. *State*, (1976) 264 Ind. 484, 346 N.E.2d 559. Given the scrutiny with which any plea of guilty must be viewed, the failure of the trial court to make a determination of competency was error.

In contrast to *Morris* v. *State, supra,* however, we do not think that the facts of this case require that the Appellant's plea be withdrawn and a new trial ordered. The record of the Appellant's post-conviction remedy hearing reveals that there is a substantial body of psychiatric information in existence which was compiled before the entry of the Appellant's plea. A retroactive determination of competency is possible under these circumstances. *Evans* v. *State*, (1973) 261 Ind. 148, 300 N.E.2d 882. Moreover, this information has already been presented to the trial court at the Appellant's post-conviction remedy hearing.

The trial court, based upon the evidence heard at the post-conviction remedy hearing in this case, specifically addressed the questions of the Appellant's competency to stand trial and competency to enter his plea of guilty. It found:

"That the petitioner, Richard Lee Schuman, was on the 1st day of July, 1968 capable of standing trial and had comprehension sufficient to understand the nature of the criminal action against him and the proceedings thereon

and to make his defense, and comprehension to enter his plea of guilty to the charge of second degree murder in the cause of action entitled State of Indiana versus Richard Lee Schuman, Cause No. 3845;

That defendant was not under the influence of narcotics at the time he pled guilty to second degree murder."

The trial court's findings of fact on this issue summarize the testimony heard here:

"Petitioner was attended by his own doctor, Dr. Robert Schmitt, and placed in the hospital from May 26, 1967 to June 30, 1967, and his doctor saw him at his office on June 18, August 4, August 17 and August 25 of 1967, and at the LaPorte County Jail on two different occasions; that petitioner has received eight Indoklon treatments and no electroshock treatments; that Dr. Schmitt diagnosed petitioner's case as depressive reaction and psychopathic personality and that he was suffering from no psychosis; that he was not psychotic on either visit at the county jail, and it was the doctor's testimony that he was competent to stand trial and that he was sane at the time of the commission of the offense; that it was the opinion of Dr. Robert Schmitt that he was aware of right and wrong, fully appreciated the seriousness of his situation, understood the charges against him and was fully capable of understanding and assisting in the behalf of his defense; that the petitioner misled his attorney in withholding from his attorney the true facts of the incident of the shooting; that the petitioner suggested to his attorney a plea of temporary insanity, and that after the petitioner had been examined by Dr. Schmitt and by Dr. Borough, and after consultations with Attorney Fox and petitioner's parents concerning the insanity plea, the petitioner then informed his attorney and related the incident of the shooting to his attorney and stated that he had withheld the facts for the purpose of an insanity plea; that the testimony of Dr. Schmitt was that the medications administered and described and introduced in evidence as given to the petitioner were not narcotic in nature and were only given to reduce anxiety, control rage and anger, and to alleviate depression, and that the Indoklon treatments had little or no effect on memory loss or producing confusion; that there was testimony by one Dr. Douglas L. Foster, a psychiatrist, who had never examined or seen the petitioner until the date of trial of this cause; that Doctor Foster, in answer to a hypothetical question based on some of the facts, which hypothetical question

included 11 electroshock treatments, the question being whether such a hypothetical man could knowingly, voluntarily and intelligently make statements and pleas, and his answer was, 'I would question his ability to do such.' The answer is therefore, 'No.'; that Dr. Schmitt testified to the same hypothetical question, including the 11 electroshock treatments, and his answer was yes, that he could knowingly, voluntarily and intelligently make statements and pleas. The evidence is that no electroshock treatments were given the petitioner; that the witness William G. Hornyak, who interviewed the petitioner the next day after pleading guilty to second degree murder, testified that the defendant was friendly and cooperative but under some stress; that the petitioner at that time was capable of understanding what he had done and he knew what he had pled guilty to and he was willing to go to prison to get some schooling there, that he realized he had committed an extremely serious crime and was willing to accept punishment by the court."

The record thus indicates that the trial court heard testimony of the psychiatrist who had treated the Appellant and had seen him in jail prior to the entry of his guilty plea, another psychiatrist called by the Appellant, the Appellant's trial counsel, a man who interviewed the Appellant the day after entry of the plea, and, presumably, the Appellant himself. A letter from Dr. Burough, the psychiatrist whose examinations necessitated the continuances in this case, to the Appellant's trial counsel was also admitted into evidence at the post-conviction remedy hearing. That letter reported the doctor's conclusions: "I therefore, find him sane in the usual medical sense of the term as it is used in the courts of Indiana."

The scope of this hearing was sufficient to determine the competency of the Appellant to enter his plea of guilty. As with any other factual determination by a trial court, we cannot weigh the evidence or judge the credibility of witnesses. We cannot disturb the determination of the trial court when that determination is based upon substantial, though conflicting evidence. *See: Riggs* v. *State,* (1976) 264 Ind. 263, 342 N.E.2d 838, regarding rulings on the admissibility of a confession; *Roberts* v. *State,* (1975) 263

Ind. 53, 324 N.E.2d 265, regarding review of a trial court's finding arising from a post-conviction remedy hearing. While the evidence in this case certainly conflicts, there is substantial evidence to support the finding by the trial court that the Appellant was competent to enter his guilty plea. We cannot disturb that finding.

The Appellant also raises in this appeal the question of the competency of his trial counsel. The Appellant's motion to correct errors does not specify that the finding by the trial court on this issue was in error and the issue is therefore waived. Ind. R. Tr. P. 59; *Finch v. State*, (1975) 264 Ind. 48, 338 N.E.2d 629. We also note that the record presented to this court is not sufficient to determine this issue. Neither the testimony of the Appellant's attorney nor the testimony of the Appellant himself is included in the record. Nothing in the record is called to our attention to support this contention. It is the duty of an appellant to present an adequate record to an appellate court. *Buchanan v. State*, (1975) 263 Ind. 360, 332 N.E.2d 213; *State v. Irvin*, (1973) 259 Ind. 610, 291 N.E.2d 70. We cannot consider an allegation of error when there is nothing in the record to support it.

The judgment of the trial court denying the Appellant's petition for post-conviction relief is affirmed.

Givan, C.J., Prentice, J., concur; DeBruler, J., concurs in result; Hunter, J., dissents with opinion.

### DISSENTING OPINION

HUNTER, J.—The majority opinion finds error in the trial court's failure to order a competency hearing, but defendant's plea of guilty need not be withdrawn in view of the psychiatric testimony given at the post-conviction hearing. I dissent from that portion of the opinion authorizing a retrospective determination of competency.

The evidence presented to the trial court and that evidence relied upon by the judge in his findings of fact exhibits the

infirmities in a retrospective determination of competency. Two psychiatrists testified. One of the psychiatrists, Dr. Foster, had never examined petitioner and had never seen him prior to the hearing. His testimony was generally that petitioner could not have been competent at the time of his plea, but, of necessity, was restricted to theoretical answers to hypothetical questions. The other psychiatrist, Dr. Schmitt, had seen petitioner during a period of hospitalization prior to his arrest and had visited him twice while in jail. Dr. Schmitt's testimony was to the effect that in his opinion petitioner was competent to stand trial despite sociopathic character disorders. The conflict between these opinions was resolved, as would be expected, in favor of the opinion of Dr. Schmitt, who had personally examined petitioner at the time of trial. The petitioner's proof was hamstrung by a situation existing because of the trial court's failure to appoint two psychiatrists at the time it had reasonable cause to believe that petitioner may have been suffering from a mental disorder. In addition, the medical records of petitioner's hospitalization had been destroyed by fire in the interim, hindering petitioner's cross-examination of Dr. Schmitt and making impossible any certain determination of whether electroshock treatments had been administered to petitioner. Thus, favorable testimony was hindered by the fact that Dr. Foster had not personally examined petitioner. And the unfavorable testimony of Dr. Schmitt, heavily relied upon by the trial judge in his findings of fact, was given grace from effective cross-examination by the loss of evidence.

The procedure authorized by the majority opinion finds no sanction in the statute. It is there stated that the trial court must stop the proceedings and immediately appoint two psychiatrists to examine the defendant and hold a competency hearing. A later determination does not cure this error. As I have stated previously, a retrospective determination of competence invites judicial noncompliance and violates the statu-

tory mandate. *Miller* v. *State,* (1976) 264 Ind. 548, 348 N.E.2d 14 (dissenting opinion).

I would reverse and remand.

NOTE.—Reported at 357 N.E.2d 895.