**Richard Lee SCHUMAN, Petitioner,**

v.

**Jack Raymond DUCKWORTH, Indiana Attorney General, Respondent.**

No. S81–204.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 21, 1981.

---

Richard Lee Schuman, pro se.

David Steiner, Deputy Atty. Gen., Linley Pearson, Atty. Gen., Indianapolis, Ind., for respondent.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

Petitioner Richard Lee Schuman, is a state prisoner who is presently incarcerated at the Indiana State Prison pursuant to his conviction for second degree murder. Petitioner originally entered a plea of not guilty on November 1, 1967 (R. 47–48) but changed his plea to guilty to the charge in question on July 1, 1968 (R. 62–65). The state trial court accepted the guilty plea and sentenced Petitioner to life imprisonment on July 12, 1968 (R. 67–71). Thereafter, the Petitioner filed a Petition for Post-Conviction Relief in the state trial court on January 22, 1970 (R. 2). Following various proceedings, including an evidentiary hearing, the state trial court issued its Findings of Fact and Conclusions of Law (R. 91–107) on July 24, 1974, denying any relief to Petitioner. An appeal was taken to the Supreme Court of Indiana, and the Petitioner presented to that court essentially the same issues in question in this proceeding. The Supreme Court of Indiana decided the issues adversely to Petitioner on December 9, 1976, in a written opinion. See *Schuman v. State*, 265 Ind. 586, 357 N.E.2d 895 (1976).

The Petitioner has raised essentially two grounds for relief in this proceeding. In essence, the Petitioner has alleged that his guilty plea was constitutionally defective because he was incompetent to enter such a

plea at the time in question. He also complains about the failure of the trial court to conduct a competency examination prior to the entry of the guilty plea. The state court record has been filed here and carefully examined.

The Petitioner has not shown that the various state proceedings were less than full and fair. The state court records reveal that Petitioner was afforded an adequate opportunity to raise his claims in the state courts. The factual findings of the state courts with respect to the present issues including those set out in the opinion of the Supreme Court of Indiana are entitled to deference by the Court, and those findings are fully supported by the record. See 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *United States ex rel Clark v. Fike,* 538 F.2d 750 (7th Cir.1976); *United States ex rel McNair v. State of New Jersey,* 492 F.2d 1307 (3d Cir.1974).

■ It is the Petitioner's burden to establish that the merits of an issue were not resolved against him in full and fair proceedings in the state courts. *Sumner v. Mata, supra; Howard v. Maggio,* 540 F.2d 1280 (5th Cir.1976); *Velleca v. Superintendent M.C.I. Walpole,* 523 F.2d 1040 (1st Cir. 1975). In the absence of such a showing, the Court ought to accept the factual determinations of the Indiana courts, where relevant, on the issues. *Sumner v. Mata, supra; United States ex rel Harris v. State of Illinois,* 457 F.2d 191 (7th Cir.1972).

■ While it is the responsibility of a district court to independently apply federal law in making a determination with regard to issues having constitutional implications in a habeas corpus action, *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), it is clear that the court of Indiana properly resolved the issues in conformance with applicable constitutional law. Federal habeas corpus relief is available to a state prisoner only upon a showing by clear and convincing evidence that he was denied federal constitutional rights in state proceedings resulting in conviction. 28 U.S.C. § 2254(a); *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Mabra v. Gray,* 518 F.2d 512 (7th Cir.1975), *cert. denied,* 423 U.S. 1023, 96 S.Ct. 466, 46 L.Ed.2d 397. The requisite showings have not been made by the Petitioner in this case.

■ The Petitioner in this habeas corpus proceeding is primarily attacking the voluntary and intelligent nature of his guilty plea. He claims that he was mentally incompetent and under the influence of drugs at the time of his plea. Guilty pleas are meant to be final, if consistent with due process. *Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). The well recognized rule is that a guilty plea is valid if it is made voluntarily and intelligently. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In this regard, the facts in the record of the post-conviction proceeding in the state trial court involving Petitioner, and as found by the Supreme Court of Indiana, demonstrate that Petitioner was not incompetent or under the influence of drugs at the time of his plea, and accordingly, the voluntary and intelligent nature of Petitioner's guilty plea has not been vitiated.

The Supreme Court of Indiana, in citing the Findings of the state trial court in its opinion in Petitioner's case, established the following facts:

Petitioner was attended by his own doctor, Dr. Robert Schmitt, and placed in the hospital from May 26, 1967 to June 30, 1967, and his doctor saw him at his office on June 18, August 4, August 17, and August 25 Of 1967, and at the LaPorte County Jail on two different occasions; that petitioner had received eight Indoklon treatments and no electroshock treatments; that Dr. Schmitt diagnosed petitioner's case as depressive reaction and psychopathic personality and that he was suffering from no psychosis; that he was not psychotic on either visit at the county jail, and it was the doctor's testimony that he was competent to stand trial and that he was sane at the time of the

commission of the offense; that it was the opinion of Dr. Robert Schmitt that he was aware of right and wrong, fully appreciated the seriousness of his situation, understood the charges against him and was fully capable of understanding and assisting in the behalf of his defense; that the petitioner misled his attorney in withholding from his attorney the true facts of the incident of the shooting; that the petitioner suggested to his attorney a plea of temporary insanity, and that after the petitioner had been examined by Dr. Schmitt and by Dr. Borough, and after consultations with Attorney Fox and petitioner's parents concerning the insanity plea, the petitioner then informed his attorney and related the incident of the shooting to his attorney and stated that he had withheld the facts for the purpose of an insanity plea; that the testimony of Dr. Schmitt was that the medications administered and described and introduced in evidence as given to the petitioner were not narcotic in nature and were only given to reduce anxiety, control rage and anger, and to alleviate depression, and that the Indoklon treatments had little or no effect on memory loss or producing confusion; that there was testimony by one Dr. Douglas L. Foster, a psychiatrist, who had never examined or seen the petitioner until the date of trial of this cause; that Doctor Foster, in answer to a hypothetical question based on some of the facts, which hypothetical question included 11 electroshock treatments, the question being whether such a hypothetical man could knowingly, voluntarily and intelligently make statements and pleas, and his answer was, 'I would question his ability to do such.' The answer is therefore, 'No.', that Dr. Schmitt testified to the same hypothetical question, including the 11 electroshock treatments, and his answer was yes, that he could knowingly, voluntarily and intelligently make statements and pleas. The evidence is that no electroshock treatments were given the petitioner; that the witness William G. Hornyak, who interviewed the petitioner the next day after pleading guilty to second degree murder, testified that the defendant was friendly and cooperative but under some stress; that the petitioner at that time was capable of understanding what he had done and he knew what he had pled guilty to and he was willing to go to prison to get some schooling there, that he realized he had committed an extremely serious crime and was willing to accept punishment by the court. (*Schuman v. State, supra,* 357 N.E.2d at 898–899).

■ The findings made by the Indiana courts have clear support in the record. Dr. Schmitt's testimony, in particular, strongly establishes that Petitioner was competent to enter his guilty plea and not under the influence of drugs at the time. See, R. 141–228. Dr. Schmitt had examined and treated Petitioner before and after the murder for which Petitioner was convicted (R. 144–151). Dr. Schmitt examined Petitioner in the jail after the murder at the request of defense counsel (Raymond Fox) to determine if Petitioner was competent and could assist in his defense (R. 160, 163). Dr. Schmitt informed Mr. Fox that in his opinion, Petitioner was competent to assist in his own defense and was sane at the time of the crime (R. 163–165, 228). He never found Petitioner to be psychotic (R. 158) but found him to be an over indulged psychopath (R. 180–181). Moreover, the drugs and treatment given Petitioner did not impair his ability to think and reason (R. 151–157). Dr. Schmitt also indicated that no electric shock treatments were given to Petitioner (R. 166, 175). This fact certainly depreciates the value of the hypothetical question addressed to Dr. Foster, since it was premised on electric shock treatment in part (R. 126–129). Moreover, even on basis of the erroneous hypothetical question, Dr. Schmitt was of the opinion that Petitioner was competent to enter a knowing, voluntary and intelligent guilty plea (R. 165–166).

Further, as noted by the Indiana Supreme Court, Dr. Schmitt's diagnosis of Petitioner's mental state during the relevant period of time was in accord with that of

Dr. Burrough, who examined Petitioner in the spring of 1968 at the request of Mr. Fox. *Id.,* at 899. Dr. Burrough also found no psychosis and believed Petitioner was sane under standards used in the courts of Indiana (R. 74–75). Clearly, Petitioner's claim that his plea was the product of drugs and his mental state is without merit. The facts strongly support the finding of competency. He had "... the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense...". *Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975).

█ Petitioner's complaint about the lack of a competency hearing prior to the guilty plea fails here for at least two reasons. First, since Petitioner pleaded guilty, he can only attack the voluntary and intelligent nature of his plea in this proceeding. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). In *Tollett,* a habeas corpus case, the court limited the issues in a guilty plea situation, as follows:

> We thus reaffirm the principal recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligence character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson,* 397 U.S. 759, 25 L.Ed.2d 763]. (411 U.S. at 267, 93 S.Ct. at 1608).

The lack of a pre-guilty plea hearing is not cognizable here.

█ Secondly, where a body of psychiatric and other evidence of competency, contemporaneous with the events at issue, is available, a finding of competency to stand trial or to enter a guilty plea, as here, can properly be made in a post-conviction proceeding. *Bolius v. Wainwright,* 597 F.2d 986 (5th Cir.1979); *United States ex rel. Curtis v. Zelker,* 466 F.2d 1092 (2nd Cir. 1972). There was strong contemporaneous evidence of Petitioner's competency in this case, and therefore, the state courts properly rejected Petitioner's claim.

No basis for relief is stated under 28 U.S.C. § 2254. WRIT DENIED.