BUFORD TINSLEY; JOHNNIE TINSLEY *v.* STATE OF INDIANA.

[No. 1271S347.  Filed July 5, 1973.]

*Donald L. Adams, Adams, Ecklund & Frutkin,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

DeBRULER, J.—This is an appeal from a conviction of co-defendants, John and Buford Tinsley, for the crime of first degree burglary after a trial without a jury in the Marion County Criminal Court, Saul Rabb presiding. A direct appeal was taken by both defendants alleging that the evidence introduced at trial was insufficient as a matter of law to sustain their convictions. Some eleven months later a Belated Motion to Correct Errors was filed, under PC. Rule 2, on behalf of Buford Tinsley alleging that the trial judge had evidenced a bias against appellant, Buford Tinsley, by a remark the judge made during trial and also that he was incompetent to stand trial at the time of his conviction. The trial judge denied the motion without a hearing, and appellant, Buford Tinsley, has filed a belated appeal contesting the denial of the motion and failure to hold a hearing on the motion.

On Sunday, February 21, 1971, Mrs. Mary Sturdivant left her home at about 10:15 a.m. in order to attend church. She testified that when she left the doors were locked and the windows closed. When she returned at about 1:30 p.m. she found that her front door had been broken in and the lock broken off. She also found that her house had been ransacked and her television set was missing. A police officer also testified that the front door of the Sturdivant residence had been broken in and the house had been ransacked.

Arthur Walton testified that he lived next door to Mrs.

Sturdivant. At about 11:30 a.m. that day he was standing at the back door of his house when he saw both appellants carrying boxes out of a shed in the Sturdivant backyard. They put several boxes in a car and drove off. Sometime later they returned and parked in the alley behind Mrs. Sturdivant's house. Walton testified that he continued to observe appellants and saw a third man come out of Mrs. Sturdivant's house and give a television set to appellants who were waiting in the alley. Both appellants carried the set to the car and drove away. The trial court found both appellants guilty under the theory that they were accessories to the burglary of Mrs. Sturdivant's house.

First degree burglary is defined in the affidavit in this trial and in our statutes (IC 1971, 35-13-4-4, being Burns § 10-701) as (1) a breaking and entering into a dwelling place, (2) with intent to commit a theft therein. The testimony of Mrs. Sturdivant concerning the broken lock and door clearly established a breaking and entering into her dwelling place. Her further testimony concerning the missing television, along with Walton's testimony regarding the removal of the set from the house, demonstrates the intent to commit a theft as defined in IC 1971, 35-17-5-3, being Burns § 10-3030.

Appellants contend that this evidence is insufficient because, although it may establish a burglary, it fails to establish that they in fact entered the house. As pointed out above, however, the trial court found appellants guilty under Indiana's accessory statute (IC 1971, 35-1-29-1, being Burns § 9-102) and as we have stated in the past:

"It is clear that under this statute (9-102) the appellant could be convicted as a principle if he aided or abetted the breaking and entering of the home without regard to whether he himself had entered the home." *Smithhart* v. *State* (1971), 256 Ind. 533, 270 N. E. 2d 740.

Walton's testimony shows that both appellants were on the scene of the burglary and that the forcible entry into the

house was clearly visible. Appellants were familiar with the neighborhood. They were at the site for considerable length of time and were seen removing boxes from a shed by the house, and a third man was seen handing the television over the fence to them at the rear of the house, after which appellants loaded it into a car. Such evidence is sufficient to establish that they were accessories to the burglary of that home.

Appellants urge, however, that we should discount the testimony given by Arthur Walton because it was brought out in the course of his cross-examination that about a year before this incident Walton had been discovered stealing furniture from a nearby house in which appellant, Johnnie Tinsley, was then living, and that Walton had thrown several rocks through Tinsley's window. Appellants contend that this apparent bias on Walton's part coupled with the alibi testimony of the appellants' brother and mother mandates us to discount the witness Walton's testimony.

This, of course, would require us to resolve questions of credibility and, as this Court has said ennumerable times, we will not weigh evidence nor will we resolve questions concerning the credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the finding of the trial court. *McFarland* v. *State* (1973), 260 Ind. 349, 295 N. E. 2d 809. A conviction will be affirmed if from that viewpoint there is evidence of probative value from which the trier of fact could reasonably infer that the appellants were guilty beyond a reasonable doubt. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558. The evidence submitted at this trial was sufficient as to all the necessary elements of the charge.

We now turn to the contentions raised by appellant Buford Tinsley's belated appeal. During the testimony of Arthur Walton the trial judge repeatedly responded to appellant's counsel's objections that he was unable to hear Walton's testimony by ordering the witness to speak louder. After

several admonishments to the witness, the judge stated to Walton:

"THE COURT:   Look, fellow, if that fellow (appellant) doesn't hear you I'll have to turn him loose.

A.   Okay.

THE COURT:   And it would be your fault."

The judge also instructed the deputy prosecutor that he would not make his case with a witness that could not be heard. Appellant contends that this statement by the judge evidences a bias against the appellant. We do not believe that the trial judge's comments can be construed as evidence of bias but rather as attempts, resulting from appellant's objections, to have the State's witnesses be heard by appellant and his counsel. This contention is without merit.

Appellant's second contention in his belated appeal is that he must be granted a hearing on the question of his competency at the time of his trial. The Belated Motion to Correct Errors in this case was not filed by either the attorney who had been appellant's trial counsel or the attorney who had perfected appellant's direct appeal. The only factual allegation contained in the motion filed in the trial court bearing on appellant's competency at the time of his trial was a copy of a Marion Probate Court judgment and order of April, 1956, in which a guardian was appointed for Buford Tinsley because he was found to be "incapable of managing his estate because of mental illness." The State did not respond to appellant's Belated Motion to Correct Errors and we are therefore constrained to treat the allegations as true. *Allred* v. *State* (1965), 246 Ind. 359, 203 N. E. 2d 830; *Goff* v. *State* (1960), 240 Ind. 267, 163 N. E. 2d 888. The trial court denied the motion without a hearing. Appellant now contends that the court erred in not holding a hearing on the matter of his competency.

It is an element of fundamental due process that a defendant cannot be placed on trial for a crime if he is mentally

incompetent to understand the proceedings or participate in his defense. *Pate* v. *Robinson* (1966), 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815; *Sims* v. *State* (1965), 246 Ind. 660, 208 N. E. 2d 469. The Indiana Legislature has enacted two statutes concerning the method of raising the question of a defendant's competency to stand trial and the procedure to be followed in dealing with the issue. Indiana Code 1971, 35-5-3-2, being Burns § 9-1706(a) concerns the period before or during the trial, and IC 1971, 35-5-3-3, being Burns § 9-2217(a) is directed to the period after the trial but before sentencing. Both statutes provide that the trial judge, either on his own motion or upon the suggestion of any person, must hold a hearing to determine defendant's competency to stand trial if there are "reasonable grounds" to believe that the defendant is presently incompetent.

The facts presented in this appeal, however, do not concern the usual situation where the question to be resolved on appeal is whether there were sufficient indicators before, during, or even shortly after the trial itself to create "reasonable grounds" to doubt the defendant's competency. If there were and the trial judge failed to respond to these indicators and hold a hearing on the matter, even on his own motion, the case must be remanded. *Pate* v. *Robinson, supra; Moore* v. *U.S.,* 464 F. 2d 663 (9th Cir., 1972); *Sims* v. *Lane,* 411 F. 2d 661 (7th Cir., 1969). In this case, on the other hand, no question was raised at trial by any party regarding appellant's competency.[1] Nor does the record indicate that there were any actions on appellant, Buford Tinsley's, part which would arouse suspicions of incompetency. On the contrary, the trial transcript reveals that appellant's defense was adequately

---

1. We will not base our decision on this matter, as appellee would have us do, on a theory that appellant waived his right to a hearing by his failure to assert his alleged incompetency at trial. The peculiar nature of the question of competency precludes the application of a waiver theory to it. One who may be incompetent cannot be said to have knowingly and intelligently waived his right to a hearing on the matter. See *Sieling* v. *Eyman,* 13 Cr. L. Rep. 2174 (9th Cir., 1973); *Seidner* v. *U.S.,* 260 F. 2d 732 (D. C. Cir., 1958).

conducted by his attorney and relevant, but apparently unconvincing, alibi evidence was introduced on behalf of appellant.

It is apparent therefore that this appeal presents a somewhat unique factual situation since the only indicators of appellant's possible incompetency during a trial have surfaced only after the trial, in which it appears from the record that the issue of the guilt of the appellant had been adequately exposed to the adversary process. We cannot, however, conclude from the transcript alone that the defense seemed adequate and therefore the appellant himself was competent. *Bishop* v. *U.S.* (1956), 350 U.S. 961, 76 S. Ct. 440, 110 L. Ed. 835. The issue was never heard at an evidentiary hearing and the absence of indicators on a record concerning other issues cannot serve to abolish appellant's right to be heard on the matter if he now demonstrates a reasonable doubt as to his competency. The record in a trial would certainly be relevant evidence at a hearing on the matter but it cannot be deemed to take the place of a hearing.

The verdict of a court should not be lightly disturbed in situations such as this when the trial process has been completed without any indications of incompetency. On the other hand we do not believe that the issue of competency should always be irrevocably dissolved simply because nothing during the time frames set out in §§ 9-1706 (a) or 9-2217 (a) gave rise to doubts about an appellant's competency, regardless of the significance of the post trial disclosures and their relevance to possible incompetency at the time of trial. In certain unique situations facts coming to light only after the trial may be so significant and compelling as to create "reasonable grounds" to question a defendant's competency at the time of his trial and therefore require a hearing on the question.

A similar situation was presented in a Seventh Circuit case decided sometime ago. In that case a defendant plead guilty to charges in 1931. In 1945 he alleged for the first time, in

a motion to dismiss the plea, that he had been declared "insane" at the St. Elizabeth Hospital in Washington, D.C. several years before his plea and that he had never been declared competent since that time. The trial court dismissed his motion without a hearing but the Court of Appeals reversed and remanded stating:

> "We think the allegations as to petitioner's insanity prior to the commission of the crime required investigation to ascertain the facts as to his mental condition and status at the time of his trial." *Kuczynski* v. *U.S.*, 149 F. 2d 478 (7th Cir., 1945).

We believe the Court of Appeals holding in *Kuczynski* is persuasive and also that the facts presented here are sufficient to raise legitimate doubts in regard to appellant's competency to justify a hearing on the matter. A judicial finding that Buford Tinsley was incapable of managing his affairs because of "mental illness" is a compelling and significant determination in terms of his ability to conduct his defense, especially in light of the similarities between the Indiana standard for the appointment of a guardian in incompetency hearings and the due process standard for the appointment of a guardian in incompetency hearings and the due process standard for competency for criminal defendants. The test for appointment of a guardian in Indiana is whether the defendant's mental impairment renders him incapable of understanding and acting with discretion· in the ordinary business affairs of life. *Brannon* v. *Hayes* (1921), 190 Ind. 420, 130 N. E. 803. The test for a criminal defendant's competency is whether he has the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky* v. *U.S.* (1960), 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824.

We hold therefore that this judgment of the Marion Probate Court casts sufficient reasonable doubt on appellant, Buford Tinsley's competency at the time of his trial to warrant an

evidentiary hearing on the matter. We should emphasize, however, that the burden of establishing his incompetency at the hearing will rest with appellant, Post Conviction Rule 2, § 1 (c), and that the focus of the hearing should be on appellant Tinsley's capabilities to participate effectively at his former trial. As stated above the conduct of appellant's defense at the former trial as well as the comportment of appellant during the trial would certainly be relevant evidence in determining his competency. The ultimate and relevant issue is not the state of Tinsley's mental health in 1956, but his abilities to function at his trial in 1971.

We therefore affirm the court's judgment of conviction of John Tinsley. However, the appeal of Buford Tinsley is now ordered held in abeyance and the cause is remanded for a hearing to determine whether Buford Tinsley was competent to stand trial at the time of his trial in 1971, such hearing to be held in compliance with the procedures set out in Burns § 9-1706 (a). The trial court is further instructed to certify its determination following the hearing to this Court for final disposition of this appeal.

Givan and Prentice, JJ., concur; Arterburn, C.J., concurs in result; Hunter, J., concurs as to Johnnie Tinsley and dissents as to Buford Tinsley.

NOTE.—Reported in 298 N. E. 2d 429.