ROY JACEY EVANS v. STATE OF INDIANA.

[No. 671S160. Filed September 10, 1973. Rehearing denied November 21, 1973.]

*Mrs. Harriette Bailey Conn*, Public Defender of Indiana, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

DeBRULER, J.—This case comes to us on appeal from a conviction of murder in the first degree after trial by jury in the Clark Circuit Court. The appeal raises questions concerning the proper procedure to be employed in the use of our Post Conviction Remedy Rule 2, as well as substantive issues concerning the sufficiency of the evidence at appellant's trial, the refusal of the trial court to give one of appellant's instructions, and whether appellant is entitled to an evidentiary hearing on the question of his competency at the time of trial.

On January 9, 1959, appellant, Roy Evans, was indicted for first degree murder in the death of one Elmer Jackson who had been found badly beaten in his apartment several days earlier. A trial was held in April of 1959, before a jury in the Clark Circuit Court. The evidence introduced at trial showed that early on the morning of January 3, 1959, Elmer Jackson was found on the floor of his apartment with severe wounds about the head. The apartment was in a state of disorder with much of the furniture overturned. Among the debris in the apartment were two bags of groceries with its contents of bread, bologna and pigs feet partially spilled about on the floor. Mr. Jackson was taken to the hospital but died shortly thereafter of multiple fractures of the skull caused by several severe blows to the head.

The police proceeded to a nearby grocery store which sold pigs feet and were told by the owners that appellant had purchased these same items on the previous night at about 11:00 p.m. The police then went to appellant's house where they were admitted by appellant's mother. Appellant was awakened by the police and questioned about his activities on the night before. He stated that he came home at about 9:00 p.m. from a local tavern, watched television and went to bed. The police asked appellant to accompany them to the police station. As appellant was putting on his shoes one

officer noticed they were splattered with what appeared to be blood. These shoes were taken by the police and at trial a State Police Laboratory technician testified that the stains on the shoe were indeed blood and were of the same type as that of deceased. He further testified that the pattern of the blood stain on the shoe (concentrated at the toe and flaring out toward the rear of the shoe) was an indication that it resulted from a forward kicking motion.

Appellant was questioned by the police at the station and at first denied being at Elmer Jackson's apartment on the previous night. After some additional questioning he asked to speak to one officer alone and gave the officer a statement which was subsequently admitted at the trial. The statement revealed that appellant had been drinking at a tavern but had gone to Elmer Jackson's apartment on the way home. Jackson told appellant to stay away from a girl he was then dating. Jackson and appellant began arguing and a fight ensued. Appellant admitted kicking Jackson in the head several times with his shoes and when he left Jackson was unconscious on the floor.

At the trial appellant testified in his defense along with four other defense witnesses. In his testimony appellant repudiated his statement made on the day of his arrest and stated that the police had "put words in his mouth" and that he was still drunk from the previous night at the time of the statement. Appellant's trial testimony was that he did indeed go to Jackson's house on the night of the murder and that Jackson and he were drinking, but they did not argue. Instead appellant fell asleep on the couch and when he awoke he had a large bump on his head and Jackson was lying on the floor in a pool of blood. Before leaving the apartment appellant walked over to Jackson and stepped in the pool of blood surrounding Jackson's head.

On cross-examination the State used appellant's testimony at a coroner's inquest conducted shortly after the death in

order to impeach his present testimony. At the inquest appellant had given a third version of the incident. In this version appellant and Jackson became involved in a fight and Johnson attacked appellant with a metal pipe. Appellant wrestled the pipe from Jackson and hit him once on the head with it. When appellant left Jackson was on the floor but there was no blood and he was breathing normally. Appellant returned to the apartment sometime later in order to get the groceries he had forgotten and found Jackson in a different position on the floor and covered with blood.

At the close of all the evidence appellant's attorney moved for a directed verdict on the grounds of insufficient evidence. The motion was denied. Appellant also submitted an instruction to the court concerning the credibility of police officers but the court refused to give the instruction to the jury. The jury returned a verdict of guilty and appellant was sentenced to life imprisonment.

Appellant timely filed a Motion for a New Trial alleging erroneous rulings on the sufficiency of the evidence and the refusal to give the police credibility instruction to the jury. The trial court denied appellant's motion on June 2, 1959. No appeal was taken from that decision.

On October 3, 1970, appellant filed a pro se petition with this Court for permission to file a Belated Appeal under PC. Rule 2(B). We granted appellant's petition and appointed the State Public Defender to perfect the appeal.

After reviewing the record of appellant's trial in 1959, the State Public Defender filed a Petition for Permission to File a Belated Motion to Correct Errors in the Clark Circuit Court under PC. Rule 2(A). The Petition for Permission to File alleged that the prior Motion for a New Trial filed in 1959, was not "adequate" since it failed to raise the ground of ineffective assistance of counsel, that the failure to raise this ground was not the fault of appellant and that appellant had been diligent in his request to allege such ground. An evidentiary hearing

on appellant's Petition for Permission to File was held in the Clark Circuit Court on June 23, 1971, and the court denied appellant's Petition to File.

On August 9, 1971, appellant filed a second Petition for Permission to File a Belated Motion to Correct Errors in the Clark Circuit Court. On October 5, 1971, the Clark Circuit Court granted appellant's second Petition for Permission to File and appellant subsequently filed a Belated Motion to Correct Errors alleging the existence of newly discovered psychiatric evidence which tended to establish that appellant was legally insane at the time of the crime. Some two weeks later appellant filed a Belated Supplementary Motion to Correct Errors alleging more newly discovered psychiatric evidence and also alleging that appellant was incompetent at the time of his trial and was therefore unable to assist his trial counsel in his defense. On December 3, 1971, the trial court denied both of appellant's motions.

Appellant now assigns the following errors on appeal: (1) The trial court erred in its ruling of June 2, 1959, in which it found the evidence sufficient and found no error in its refusal to give the instruction on police credibility; (2) That the trial court erred when it denied appellant's Petition for Permission to File a Belated Motion to Correct Errors on June 23, 1971; (3) That the trial court erred in its ruling of December 3, 1971, denying the substantive issues raised in appellant's Belated Motion to Correct Errors and appellant's Belated Supplementary Motion to Correct Errors. We shall treat these contentions in that order.

At the outset we must again reiterate that when an appellant contends that the evidence at his trial was insufficient to sustain his conviction it is not our proper function to weigh the evidence or resolve questions concerning the credibility of witnesses at the trial. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 553. Rather we must look to the testimony presented and decide if there is

evidence of probative value from which a jury could reasonably infer that appellant was guilty of the crime charged beyond a reasonable doubt. *Priola* v. *State* (1973), 260 Ind. 117, 292 N. E. 2d 604.

The crime of first degree murder upon which appellant was convicted is defined in our statute (IC 1971, 35-13-4-1, being Burns § 10-3401) as having the elements of (1) a purposeful, (2) killing of a human being (3) with premeditated malice. The evidence outlined above clearly would allow a jury to infer that Elmer Jackson was killed by repeated blows to the head. The jury could also have inferred the elements of purposefulness and premeditation from appellant's statement that he killed Jackson because Jackson was interfering with a woman with whom appellant was involved. *Maxwell* v. *State* (1970), 254 Ind. 490, 260 N. E. 2d 787.

Appellant contends, however, that the indictment specified that appellant killed Jackson by "kicking on the head" and there was a lack of evidence on this point. Appellant's statement to the police, however, clearly contains the admission that he killed Jackson by kicking him with his shoes. Furthermore the testimony of the police laboratory technician concerning the type and pattern of blood stains on appellant's shoes and the doctor's testimony as to the probable cause of Jackson's head injuries would itself be sufficient evidence from which a jury could infer that Jackson's fatal injuries were caused by kicking to the head.

Appellant next contends that the trial court erred in its refusal to read to the jury the following tendered instruction:

"In weighing the testimony of police officers, greater care should be used than in weighing the testimony of ordinary witnesses as they are hired witnesses and because of the natural and inevitable tendency of police officers to procure and remember with partialities such evidence as would be against the defendant."

The court did, however, give an instruction to the jury informing them that they were the judges of credibility for

all witnesses appearing at the trial. Only recently a majority of this Court has reaffirmed the principle that instructions which "single out any special witness and burden his testimony with any suggestion which might indicate to the jury that in the opinion of the court such witness was liable to testify falsely" are erroneous. *Cherry* v. *State* (1972), 258 Ind. 298, 280 N. E. 2d 818. That case is stare decisis on the issue presented here. It is a clear mandate of this Court that instructions as to credibility of witnesses should be general in nature and apply equally to all witnesses both for the State and the defense and hence the refusal to give defendant's tendered instruction was not error.

Appellant's next contention is that the trial court erred in its ruling of June 23, 1971, when it denied appellant's first Petition for Permission to File a Belated Motion to Correct Errors. Any error committed by the trial court in its ruling of that date, however, was mooted by its subsequent ruling of October 5, 1971, in which it granted appellant's second Petition for Permission to File which enabled appellant to file any grounds he felt would make his original motion adequate.

The State has raised objections to the October 5th ruling on the ground that appellant should not be permitted to file a Belated Motion to Correct Errors while a belated appeal is pending. There seems to be little reason, however, why this should not be permitted. The trial court has already been afforded an opportunity to rule on the matters raised in both the original Motion to Correct Errors and in the Belated Motion to Correct Errors, and the consolidation of these grounds of alleged error seem conducive to efficient and effective consideration on appeal. *Shack* v. *State* (1965), 249 Ind. 60, 206 N. E. 2d 614. The fact that a timely appeal or a belated appeal under PC. Rule 2(B) is pending should not, therefore, be a bar to the filing of a Belated Motion to Correct Errors under PC Rule 2(A). Ap-

pellant's substantive grounds found in the second Belated Motion to Correct Errors and the Belated Supplementary motion to Correct Errors, which were ruled on adversely by the trial court in its December 3rd, 1971 decision, is therefore properly before us and will be considered on the merits.

The two motions, which were consolidated by the trial court, assert that appellant was both legally insane at the time of the act and legally incompetent at the time of the trial. Appellant asks, therefore, for a new trial or in the alternative a hearing to determine his competency at the time of his previous trial.

Initially we must consider the State's contention that appellant has waived both of these grounds by the failure to assert them at trial. In order to deal with this contention we should explore these related but separate concepts. There are recognized and significant differences between a defendant who is insane at the time of the alleged criminal act and one who is incompetent to stand trial. *Floyd* v. *U.S.* (5th Cir., 1966), 365 F. 2d 368 at fn. 9. A person is legally insane at the time he commits an otherwise criminal act and is not responsible for his criminal conduct, "if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law". *Hill* v. *State* (1969), 252 Ind. 601, 251 N. E. 2d 429. One who is legally incompetent to stand trial, on the other hand, does not have the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and does not have a rational as well as factual comprehension of the proceedings against him. *Dusky* v. *U.S.* (1960), 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824.

While there are, of course, cases where the two will overlap (where a defendant is both legally insane at the time of the act and legally incompetent to stand trial) it is

quite possible that a defendant could have been insane at the time of his act but perfectly competent at the time of his trial. In that case there is no reason why such a defendant cannot be held to be capable of waiving defenses on the same basis as any other competent defendant, and should be held to the usual standards in regard to possible waivers. There is no legal reason why, in the case of a competent defendant, the defense of insanity should be viewed as a non-waivable defense. On the other hand, however, one who may be incompetent to stand trial cannot be held to have knowingly and intelligently waived his right to a hearing on the matter by his failure to assert it at trial. The peculiar nature of the question of competency precludes the application of the usual waiver theory to it. *Pate* v. *Robinson* (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L. Ed. 2d 815; *Tinsley* v. *State* (1973), 260 Ind. 577, 298 N. E. 2d 429, fn. 1. The essential point in this case therefore becomes the competency of appellant. His ability to waive certain rights must first be decided before a waiver of them can be attributed to him since the answer to whether appellant has waived any defense of insanity he may have had must turn on the question of his competency at the time of trial.

In order to demonstrate his alleged incompetency appellant has included in the record numerous reports and affidavits. These documents show that appellant's trial ended on April 28, 1959. He was sentence on May 6, 1959, and was received at the Indiana State Prison on May 8, 1959. The normal intake interview was not conducted with appellant at that time because "he was so disturbed" and the interviewing counselor recommended a psychiatric examination. On May 11, the appellant was given an examination by a doctor who described appellant in his report as "overtly psychotic" and suffering from both "hallucinations" and "distortions of reality". Upon the recommendation of the examining physician appellant was transferred to Norman Beatty Hospital. Appellant remained at Norman Beatty from June of 1959, to March of 1963, during

which time several more examinations were conducted. Appellant contends that this clearly demonstrates his legal incompetency to have been tried in April of 1959.

In Indiana the Legislature has enacted two statutes concerning the proper time and proper method of raising the question of defendant's competency to stand trial. Indiana Code 1971, 35-5-3-2, being Burns § 9-1706a concerns the time period before and during the trial, while IC 1971, 35-5-3-3, being Burns § 9-2217a is directed to the period after trial but before sentence. Both of these statutes mandate the holding of a hearing to determine a defendant's present competency to stand trial if there are "reasonable grounds" to believe defendant may be incompetent. In the usual situation indicators of a defendant's possible incompetency at time of trial would, of course, become apparent during the trial and the trial judge may be reversed on appeal if he failed to hold a hearing on the matter in the face of indicators sufficient to establish reasonable grounds to believe the defendant to be legally incompetent.

The facts presented here are not the usual situation, however. At no time either before or during the trial did any of the participants raise any questions regarding the appellant's competency. Neither does the record of the trial conducted in 1959, reveal any behavior of appellant's which should have caused the trial judge on his own motion to convene a competency hearing. When we have a situation such as this where the trial process has been completed without any apparent indications of incompetency on the part of appellant the verdict of a court should not be lightly disturbed. The relevant issue is, after all, appellant's ability to understand the proceedings and consult with his attorney and if any doubt concerning his ability to do so are to become apparent they would normally do so when he is in the process of performing these functions. However as we have held in a recent opinion:

"On the other hand we. do not believe that the issue of competency should always be irrevocably dissolved simply because nothing during the time frame set out in 9-1706a or 9-2217a gave rise to doubts about an appellant's competency, regardless of the significance of the post trial disclosures and their relevance to possible incompetency at the time of trial. In certain unique situations facts coming to light only after the trial may be so significant and compelling as to create 'reasonable grounds' to question a defendant's competency at the time of his trial and therefore require a hearing on the question." *Tinsley* v. *State, supra.*

The essential question in this case therefore is whether the psychiatric information which became available only after the trial is "so significant and compelling" as to give rise to the necessity for a hearing on the matter.

The evidence outlined above shows that ten days after the appellant's trial and two days after he was sentenced he was apparently so disturbed that an interviewer at the prison was unable to conduct a preliminary interview with him. Three days later appellant was diagnosed by a physician as "overtly psychotic." For three years immediately following his trial appellant was confined to a State mental hospital undergoing various forms of treatment. We believe that when consideration is given to the expert source of this information and its close proximity to the time of trial, it is sufficiently significant and compelling as to warrant a hearing on the matter of appellant's competency at the time of trial.[1]

We feel constrained to emphasize, as we did in our opinion in *Tinsley, supra,* that the relevant and determinative issue

---

1. Appellant has cited to us a portion of the Federal Supreme Court's decision in *Pate* v. *Robinson* (1966), 383 U.S. 375, in which the majority mandates a new trial rather than a hearing on appellant's competency at the time of the trial because of the six year time differential between the time of trial and the time when a hearing would be held. The Court apparently feared that the time span would make the task of determining appellant's competency at trial difficult. In our case, however, unlike *Pate,* there exists a substantial body of psychiatric information compiled shortly after his trial which would be relevant to a determination of competency at the time of trial.

is not appellant's mental state in May of 1959, but his ability to stand trial in April of that year. The question is whether at that time he had the ability to consult with his attorney with a reasonable degree of rational understanding and had a rational as well as factual understanding of the proceedings. *Dusky* v. *State, supra; Tinsley* v. *State, supra.* In addition to the psychiatric information outlined above, important weight in determining this question should also be afforded to appellant's testimony at the trial, preserved in the record here, and the impressions of his trial attorney as to any difficulty in communicating with appellant. Moreover under our Post Conviction Rules the burden of establishing his incompetency at the time of the trial will rest with the appellant.

We, therefore, reverse the trial court's decision of December 3, 1971, on that portion of appellant's Second Belated Motion to Correct Errors and his Supplementary Belated Motion to Correct Errors which requested a hearing on his competency at the time of trial and order that this appeal be held in abeyance. This cause is remanded for a hearing to determine whether appellant was competent to stand trial at the time of his trial, such hearing to be held in compliance with the procedures set out in Burns' § 9-1706a. The trial court is instructed to certify its determination following the hearing to this Court for final disposition of this appeal.

Givan and Prentice, JJ., concur; Arterburn, C.J., dissents without opinion; Hunter, J., not participating.

NOTE.—Reported in 300 N. E. 2d 882.