**Michael MATO, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 481S95.

Supreme Court of Indiana.

Jan. 13, 1982.

Howard S. Grimm, Jr., Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant), following a trial by jury, was convicted of Rape, Ind.Code § 35–42–4–1(1) (Burns 1979), Criminal Deviate Conduct, Ind.Code § 35–42–4–2(a)(2) (Burns 1979), Theft, Ind.Code § 35–43–4–2 (Burns 1979), and Criminal Confinement, Ind.Code § 35–42–3–3 (Burns 1979). He was sentenced to a total of forty (40) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in finding, after a belated hearing, that the defendant was competent to stand trial?

(2) Whether the trial court erred in not granting the defendant a new trial so that he might raise the defense of insanity?

Following rendition of the jury's verdict, on February 15, 1980, the trial judge on his own motion, ordered a psychiatric evaluation of the defendant. One appointed psychiatrist reported that in his opinion the defendant was not sane and was in need of psychiatric treatment. The other appointed psychiatrist reported that, in his opinion, the defendant was not competent to stand trial and had been insane at the time that he committed the criminal acts. One of the psychiatrists also recommended that the defendant receive psychiatric treatment, as did the pre-sentence report.

At a sentencing hearing held on April 1, 1980, Judge Bontrager found probable cause to believe that Defendant was not competent to proceed and committed him to a state hospital for evaluation. The judge then disqualified himself from further proceedings, and a special judge was appointed by this Court on April 11, 1980. On May 27, 1980, the state hospital superintendent reported that the defendant could understand the nature of the charges against him and could participate in his defense. A competency hearing was then held by the newly appointed judge who found, on October 6, 1980, that the defendant had been competent during his trial and was then competent to be sentenced.

\*     \*     \*     \*     \*     \*

## ISSUE I

Defendant contends that based upon events, particularly the defendant's behavior prior to and during the trial, the trial judge should have held a competency hearing, sua sponte, under Ind.Code § 35–5–3.–1–1 (Burns 1979).

■ The measure of competency to stand trial is whether or not the defendant has a present ability to consult rationally with his defense counsel and a factual comprehension of the proceedings against him. *Evans v. State*, (1973) 261 Ind. 148, 157, 300 N.E.2d 882, *Dragon v. State*, (Ind.1979) 383 N.E.2d 1046, *Dusky v. United States*, (1960) 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. Un-

der Ind.Code § 35–5–3.1–1 (Burns 1979), the trial court may raise the issue of defendant's competency at any stage of the proceedings, or at the suggestion of any person. The trial court is vested with discretion to determine if "reasonable grounds" exist to hold a competency hearing.

■ Defense counsel has detailed three indicators which he claims should have alerted the court to the need for an earlier hearing to determine whether or not the defendant had the ability to understand the proceedings against him. The first alleged indicator was the defendant's confusion at a number of pretrial appearances before the judge at which the defendant had displayed difficulty in comprehending the substance of the charges against him and the purpose of his previous appearances. The second alleged indicator was the defendant's confused response, during a polygraph examination. The third alleged indicator was an incident which had occurred at trial and in which Defendant had given responsive and logical testimony on direct examination and most of the cross-examination. At one point during the cross-examination, however, he had become confused and unresponsive and had interrupted the prosecutor to discuss a song which he claimed to have heard on the radio. The song, according to his bizarre ramblings, had some connection with his criminal conduct.

It is important to note that, as were the circumstances in *Evans v. State, supra,* at no time, either before or during the trial, did any of the participants raise any question as to Defendant's competency. Neither are we of the opinion that any of the circumstances now cited by Defendant as indicators of his incompetency were of such force as to compel an earlier invocation of the statute.

Defendant asserts that the trial court erred in failing to find him incompetent to stand trial when it became aware that "his mental competency was not such as to allow him to comprehend the nature of the proceedings against him and participate in a rational manner." This argument presumes

a matter not in the record, i.e. that the court had become aware of Defendant's incompetency. It confuses a recognition of the possibility of incompetency with an ultimate conclusion of incompetency. All that can be said of the record in this connection is that the court became aware of certain clues which he recognized as *indicators of incompetency.* In view of this recognition, it did what it was required to do under the statute—instituted proceedings to determine the question. Those proceedings resulted in a determination that the defendant was then competent to proceed with sentencing and had been competent throughout the proceedings.

Defendant's position appears to be, first that the court erred in not making an earlier determination of competency, and secondly that when it did make the determination, it erred therein.

■ With regard to the first contention, it cannot be questioned that the trial court is required to proceed under the statute as soon as reasonable grounds for believing a defendant to be incompetent become apparent. However, the statute recognizes that the grounds for such belief may appear, for the first time, at any stage of the proceedings. It must also be considered that every occurrence outside the norm is not necessarily a compelling indicator and that such occurrence may have a cumulative effect. If no petition for a competency hearing is filed, as was the case here, the matter of necessity is one that may depend, almost exclusively, upon the perceptive powers of the trial judge.

■ Defendant contends that a competency hearing held six months after trial does not comport to due process requirements, but he offers no persuasive argument or authority in support of the claim. Unquestionably, there are difficulties with retrospective determinations of competency such as fading memories, and changing conditions, to identify but two. Nevertheless, depending upon the data that is available, trustworthy determinations can be made retrospectively. *United States v. Makris,*

(5th Cir. 1979) 535 F.2d 899; and we have, in at least two previous instances, relied upon them. *Tinsley v. State*, (1973) 260 Ind. 577, 298 N.E.2d 429; *Evans v. State*, (1973) *supra; Miller v. State*, (1976) 264 Ind. 548, 348 N.E.2d 14.

We next turn to a consideration of defendant's contention that the trial court erred in its belated determination that the defendant was then competent and had been throughout the proceedings.

Judge Bontrager, testified at the competency hearing that "there were no disruptions, no indication of any nature throughout that he was not able to aid his attorney." The judge added that Defendant's unresponsive testimony at cross-examination stopped as soon as defense counsel intervened and that "(since) we were already through the trial ... as part of the pre-sentence investigation, I specifically ordered that there be psychiatric evaluation on the issue of competency and sanity as a part of the pre-sentence * * *."

"I felt from everything that I saw that he was able to aid his counsel and, in fact, did so in his own behalf, of course, through a considerable amount of direct examination. To the extent that there would have been an inability, it was only momentarily and it was only in response to that one area ..."

It is defendant's position that the testimony of the two examining psychiatrists supported a finding of incompetence. Dr. Klassen's testimony in part is:

"Q. Let's concentrate for a moment on his ability to assist his counsel. Do you feel that as of March 21 he had the ability?

"A. He had some ability to assist counsel. Probably a substantial amount to do so.

"Q. Did he have that ability on say, February 1?

"A. I don't know.

"Q. Did he have that ability on say, February 15?

"A. You know, I really don't know that. Part of the difficulty in answering

that question is the same difficulty in knowing whether his paranoia was drug induced or whether it was a schizophrenic process. Even in that case whether paranoid illness, let's say it was a schizophrenic process was inflamed by his incarceration. You know, I can't say. I don't know."

Dr. Price also testified, in part, as follows:

"Q. Do you have an opinion as to whether or not the paranoia was existing prior to your examination of him of the 21st of March?

"A. Prior?

"Q. Yes.

"A. During the trial period?

"Q. Yes.

"A. Well, there's no way I really have of knowing that since I examined him at the 21st just as with Dr. Matteu's. There's no way of knowing it either. He obviously goes upon his history of patient's memory. We would make only a presumptive guess on that. I do believe that he did misuse drugs and I think his perceptual distortions and paranoia are related to his drug use, so I would make a guess and infer only that his perception and his paranoid attitude was present during the trial and has been for years. That's an inference."

■■ This psychiatric evidence was persuasive but not controlling. It was not binding upon the court. *Miller v. State, supra.* A reasonable trier of fact could have found, as did the special judge, that the defendant was competent throughout the proceedings.

### ISSUE II

Defendant next contends that "the court, after becoming aware of Defendant's mental incompetency, should have granted Defendant a new trial to allow him to raise the defense of *mental incompetency*." (Our emphasis).

Again we point out that the court never became aware of Defendant's incompetency but only of indicators of incompetency.

Since we recognize no such defense as *mental incompetency*, we are of the opinion that the defense for which Defendant sought an opportunity to present was that of *Insanity*.

" * * * A person is legally insane at the time he commits an otherwise criminal act and is not responsible for his criminal conduct, 'if at the time such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.' *Hill v. State* (1969), 252 Ind. 601, 251 N.E.2d 429. One who is legally incompetent to stand trial, on the other hand, does not have the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and does not have a rational as well as factual comprehension of the proceedings against him." *Evans v. State, supra,* 261 Ind. at 157, 300 N.E.2d 882.

In any event, the defendant's issue is not tenable in view of our determination of Issue I. It having been determined that he was competent to stand trial, it follows that he waived all defenses and questions raised.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.