William E. BRAMLEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 20S00–8805–CR–458.

Supreme Court of Indiana.

Sept. 11, 1989.

Douglas D. Seely, Jr., Mishawaka, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in the Elkhart County Court, Defendant–Appellant William E. Bramley was convicted of the crime of Theft, a Class D felony, and was also found to be an habitual criminal offender. He received a term of four (4) years for the theft conviction, enhanced by thirty (30) years for the habitual offender finding, for a total of thirty-four (34) years, in addition to 360 days for contempt citations.

Bramley was apprehended for theft of a billfold from a Sears store on May 31, 1985, approximately three weeks after he had been paroled from the Indiana Department of Corrections Westville Correctional Center. He had been under the care and supervision of the Department of Corrections for five (5) years previous to his release pursuant to a conviction for robbery with a deadly weapon on May 9, 1980, for which he received a ten (10) year term. On November 13, 1980, he was charged in Elkhart County with robbery with a deadly weapon, found guilty of a lesser included offense of Theft, a Class D felony, and sentenced to a term of two (2) years, said sentence to run concurrently with the ten (10) year term in South Bend.

The only issue presented in this direct appeal is that of Bramley's competency to stand trial.

The trial court was faced with an extremely difficult situation in this cause. Bramley was totally uncooperative and disruptive, refusing to cooperate with anyone and refusing to follow any orderly procedure in the progress of the trial. He continually made demands on the court at the same time accusing the court and all others involved of being prejudiced against him and demanding that he be transferred to the federal system or have a federal officer present in court at all times. He refused representation by any attorney, claiming he was capable of representing himself. After advising Bramley of the hazards of self-representation, the trial court granted his wish but appointed a public defender as standby counsel. Bramley refused to cooperate with standby counsel and refused to remain in court, demanding to be sent back to the county jail in Goshen during the trial. The trial court granted his request, bringing him back to court from time to time including, but not limited to, the presentation of his defense and sentencing. He was so disruptive the court found him in contempt on four separate occasions.

On January 9, 1986, the prosecuting attorney filed a written motion to determine Bramley's competency to stand trial and the trial court appointed two physicians to

examine him. The competency hearing was held on March 3 and 10, 1986, approximately one month before Bramley's jury trial began on April 3, 1986.

Dr. Gerald Kauffman testified he was board certified in both psychiatry and neurology. At the time of the hearing, he was a staff psychiatrist at the Oaklawn Mental Health Center in Elkhart, Indiana. Dr. Kauffman testified that Bramley sufficiently understood the nature of the charges against him and what was required of him to the extent that he was competent to stand trial in that regard. However, Dr. Kauffman doubted that Bramley could assist or cooperate with his attorney or that he could competently represent himself. He felt it was possible Bramley could be controlled with medication and psychiatric treatment to the point that he could represent himself logically, consistently and coherently, or have someone else represent him.

Dr. Carl Rutt was the medical director of the Oaklawn Center since 1982. He testified Bramley was competent to stand trial. He stated Bramley was capable of fully understanding the charges against him and what was required of him in the trial of the cause and was able to assist an attorney in his defense. He believed Bramley's conduct was part of a deliberate pattern; that is, Bramley determined he could come out ahead in the long run if he acted in this fashion. Rutt stated: "Now, I'm not suggesting he is mentally healthy, I'm not suggesting that he is acting fully in his best interest. But I believe there is a substantial thread of purposeful and voluntary behavior behind this." He felt Bramley was able to understand and respond when he wanted to but made a judgment that he would not do so because it disrupted the process against him. This was demonstrated by the fact that he would demand to represent himself and then demand to be removed from the courtroom, feeling that, therefore, the process could not continue without him and that he had frustrated it entirely.

Dr. Rutt was in the court for a period of about forty-five minutes prior to his testimony and observed Bramley's conduct for that period of time which culminated in a demand to be removed from the courtroom and taken back to the county jail. The trial judge asked Dr. Rutt if this observation caused him to change his opinion, included in his written report following his examination of Bramley, which was consistent with his testimony. Dr. Rutt testified he did not change his opinion, that it was still his conclusion that Bramley was purposefully, willfully, and intentionally conducting himself in that manner.

At the conclusion of the hearing, the trial court found Bramley was competent to stand trial.

At sentencing, standby counsel requested the trial judge refer Bramley to the Department of Corrections, Reception/Diagnostic Center, for evaluation before sentencing. The court granted the motion and referred Bramley to the Reception/Diagnostic Center, continuing the sentencing hearing for a period of ninety (90) days. The trial judge received a report from the Reception/Diagnostic Center filed by John L. Clodfelter, Ph.D., a psychologist, stating that he and a consulting psychiatrist, Dr. Gary Bartell, had examined Bramley and it was their recommendation that he be given treatment in the "Community Mental Health system" outside the Department of Correction. They felt Bramley was very disturbed and was "unable to cooperate with others who might be trying to represent his best interests." Dr. Clodfelter indicated that, should the court decide to send Bramley to the Department of Correction, every effort would be made to provide needed treatment. He pointed out that Bramley recently had been released from the system and any attempts at intervention apparently were unsuccessful. Both of these examiners found it difficult to see how Bramley could have cooperated with anyone attempting to be of help to him, whether it be a mental health professional or an attorney appointed to represent him. Both felt he needed structured, institutional help. At the same time, they recognized he had not responded to treatment offered within the Department in the recent past and had no reason to believe he would do

so later. In the record are reports showing that, during Bramley's previous incarceration, he was at times in the psychiatric ward but refused to cooperate with anyone and refused to take recommended medication. There is no showing in the record by either the personnel of the DOC Diagnostic/Reception Center or anyone else what "community mental health system" is available in the area providing services appropriate to Bramley's needs. The probation officer pointed out in his presentence report that Bramley's mother and aunt each expressed the opinion that he should receive psychiatric treatment rather than simply being incarcerated. They admitted he is irrational and unstable and is in no condition to be at large in the community but felt he should somehow be helped rather than merely "warehoused."

At sentencing, two public defenders, one of them the attorney previously appointed by the trial judge as standby counsel, asked to be heard by the court as *amicus curiae.* They stated they did not represent Bramley and were not speaking in his behalf but wished to represent other defendants who might at some time be in a similar situation. The judge permitted them to speak although he remarked he "didn't really know where things are going." Clifford Williams, speaking as *amicus,* then pointed out to the court that the conclusions of the examiners at the DOC Diagnostic Center indicated that they felt Bramley was not competent to stand trial because he was unable to cooperate with or assist his attorney and, had those doctors been appointed and heard at the original competency hearing, they probably would have testified he was not competent. Williams then suggested the court reconsider its finding of competency. However, Williams' recommendation was that the court find Bramley to be guilty but mentally ill as that would insure that the Department of Corrections would at least seriously consider getting him treatment. He further stated he believed it would be cruel and unusual punishment to submit Bramley to the Department of Corrections for a sentence of thirty-four years as such punishment would be a purposeless and unnecessary imposition of pain and suffering to both himself and his family. The court responded by stating that the portion of the comprehension to stand trial statute which indicates "at any time before the final submission of any criminal case to the jury" is a limiting timetable. The court then asked if Williams had any other law to fit the peculiar circumstances of this case. Williams stated he had none. The court noted that the competency issue was determined at trial and that the determination was correct. As part of his sentencing judgment, the trial judge recommended to the Department of Corrections that Bramley be placed where he can receive the most rehabilitative treatment.

■ Essentially Bramley claims the trial court erred in concluding that Bramley was competent to stand trial, arguing that Bramley's continued disruptive conduct proved otherwise. Although it is difficult to discern what error Bramley is assigning in the conduct of the trial judge during sentencing, apparently he claims the trial court should at that point have found Bramley was not competent to stand trial and that the trial judge misunderstood his duty at the sentencing hearing, demonstrated by his expression that consideration of competency is limited by a timetable. Although it is not clear what the trial judge meant by his expression, it is clear he did reconsider the competency issue at that time. His expression could be interpreted to mean that he considered the issue at the proper time and saw no point in going further with it at the time of sentencing. He made the statement that he found Bramley to be competent to stand trial during the time of trial and was convinced at the time of sentencing it was a correct finding. Reports from the Diagnostic Center presented nothing new to the judge. The reports indicated the difficulty in dealing with Bramley because of his uncooperative manner and made recommendations as to placement. The trial court had heard medical experts testify at trial and further had the advantage of observing Bramley during all of the proceedings, pretrial as well as trial. The question on review is

whether the trial court properly determined Bramley was competent to stand trial. The trial court's determination in this regard will be reviewed only for an abuse of discretion. *Hadley v. State* (1986), Ind., 496 N.E.2d 67, 71.

The right to a competency hearing is not absolute. *Adams v. State* (1987), Ind., 509 N.E.2d 812, 814; *Brown v. State* (1985), Ind., 485 N.E.2d 108, 110. Ind.Code § 35–36–3–1(a) requires a competency hearing when the trial court has reasonable grounds for believing the defendant may not be competent to stand trial. The test for competency is whether the defendant has sufficient present ability to have a rational as well as factual understanding of the proceedings against him and further has the ability to cooperate with and consult with his defense counsel. *Adams,* 509 N.E.2d at 814; *Brown,* 485 N.E.2d at 110; *Ferry v. State* (1983), Ind., 453 N.E.2d 207, 212. Where there is conflicting evidence from physicians as to competency, we generally will not overturn the trial court's determination merely because there is such conflict as long as reasonable grounds exist upon which to base the determination that the defendant was, in fact, competent to stand trial. *Ritchie v. State* (1984), Ind., 468 N.E.2d 1369, 1371; *Ferry,* 453 N.E.2d at 212; *Howard v. State* (1976), 265 Ind. 503, 505–06, 355 N.E.2d 833, 835.

Bramley cites *Pate v. Robinson* (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; *Evans v. State* (1973), 261 Ind. 148, 300 N.E.2d 882; and *Tinsley v. State* (1973), 260 Ind. 577, 298 N.E.2d 429, claiming the trial court demonstrated an improper weighing of factors here as to Bramley's competency by permitting him to represent himself and then to absent himself from the courtroom during trial proceedings when it was clear he was not competent to make those decisions. Those cases are distinguishable from the instant cause. In *Pate v. Robinson,* Justice Clark, writing for the United States Supreme Court, rejected the State's argument that Robinson deliberately waived the defense of his competency to stand trial by failing to demand a sanity hearing. Justice Clark commented: "But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." 383 U.S. at 384, 86 S.Ct. at 841, 15 L.Ed.2d at 821. The Court in *Pate* was speaking to a situation where no question of competency was raised at trial and the trial court had no opportunity to rule on it or even know of it at that time. The same situation was presented in *Tinsley, supra,* and *Evans, supra,* both written by Justice DeBruler, in which this Court held:

> On the other hand, we do not believe that the issue of competency should always be irrevocably dissolved simply because nothing during the time frames set out in §§ 9–1706(a) or 9–2217(a) gave rise to doubts about an appellant's competency, regardless of the significance of the post trial disclosure and their relevance to possible incompetency at the time of trial. In certain unique situations facts coming to light only after the trial may be so significant and compelling as to create "reasonable grounds" to question a defendant's competency at the time of trial and therefore require a hearing on the question.

*Evans,* 261 Ind. at 160, 300 N.E.2d at 888 (citing *Tinsley,* 260 Ind. at 583, 298 N.E.2d at 433). It is true it would be improper for a trial court to permit an incompetent defendant to damage himself before a jury by waiving his rights when it is clear the waivers are due to his incompetency. At the same time we must recognize the duties and responsibility of a trial judge to see that causes are tried and final determinations made. It would be impossible to accomplish this if a defendant is permitted to purposely frustrate the procedures by disruptive behavior.

Here, the trial judge was in a position to observe Bramley and observe his conduct. That conduct was capable of being interpreted as a deliberate attempt to bring about a result favorable to Bramley. The court heard testimony from expert witnesses which supported that interpretation although there was some conflict in that

testimony. We cannot say the trial court abused its discretion in resolving a very difficult situation.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.