William F. BARNES, Appellant,

v.

STATE of Indiana, Appellee.

No. 83S00–9303–CR–287.

Supreme Court of Indiana.

May 6, 1994.

Bruce V. Stengel, Beardsley and Stengel, Clinton, for appellant.

Pamela Carter, Atty. Gen., Joseph F. Pieters, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

In June of 1992, appellant was charged with the murder of Irene Bruce Curry. The trial court entered a plea of not guilty and appointed counsel for Barnes. Defense counsel then filed a notice of insanity defense and a motion to determine competency. The court appointed two doctors to examine Barnes as to the insanity defense and also requested that the doctors examine him for competency to stand trial.

After a hearing, the court ruled that the defendant was competent to stand trial. A jury found appellant to be guilty of murder but mentally ill. The trial judge sentenced appellant to sixty (60) years.

The facts are: Appellant was a regular customer at Sharp's Mini–Mart, located in Clinton, Indiana. From time to time, he made purchases and loitered there for extended periods of time. He would "patrol" the parking lot of the mini-mart to prevent others from using drugs, although according to Steve Sharp, the owner of the mini-mart, there was no drug problem. Due to appellant's unusual activity, the owner asked him not to return. Eventually he did return and met Irene Curry, the decedent, who on one

occasion asked appellant to leave the store because he was harassing customers. Following that incident, appellant told Sharp that he hated Curry and wanted him to fire her. On a later occasion, appellant told Sharp that he did not like Curry and was going to kill her. However, Sharp testified that he did not believe that Curry was in any real danger.

Late in the evening of June 8, 1992, appellant left his home in Clinton, Indiana dressed in military fatigues and wearing a hat marked "C.I.A." He took a rifle with him and drove to the mini-mart. When he arrived, he exited his vehicle, placed a pair of sound suppressors over his ears, picked up his rifle, and walked to the front of the store. At that time, Curry, Patricia Dressler, another employee, and Linda Greggs, a customer, were the only people in the store. Greggs was the first to notice appellant and called the others' attention to him. As she did so, appellant raised the gun and aimed it at Curry. Dressler hid as Curry yelled at appellant to "stop it." Appellant then entered the store as Curry moved behind the counter.

Appellant fired a shot at Curry but missed her. A second shot struck Curry in the head. It later was determined that this was the fatal shot. While Curry lay face down on the floor, appellant fired six additional shots into her head, arms, and buttocks. Appellant made several statements in which he admitted killing Curry; however, he contended he was required to kill her as part of a government mission.

Appellant claims the trial court erred in allowing gruesome and cumulative photographs to be introduced over his objection. Appellant also contends the trial court erred when it failed to grant a mistrial based upon what appellant describes as a false or misleading statement of the prosecutor to obtain admission of one of the photographs. Appellant first objects to Exhibits 9, 10, 11, 12, and 25. These were photographs taken of the decedent's body at the scene of the crime. Exhibits 9 and 12 show the decedent's body lying in the prone position face down. Exhibit 25 shows the decedent's body after the police had rolled her over exposing her bloody face and chest area.

▬▬▬ Officer Michael Goldner of the Indiana State Police testified as to what he found when he arrived upon the scene and identified the photographs in question. Admission of photographic evidence is within the trial court's discretion. This Court will not disturb that discretion except for an abuse. *Perigo v. State* (1989), Ind., 541 N.E.2d 936. The fact that the photographs depict gory, revolting, or inflammatory details of the crime is not a sufficient basis for reversal unless they are without relevance to any matter at issue. *Id.* Photographs are admissible if they depict the subject of the testimony received from a witness. *Id.* We see no error in the admission of State's Exhibits 9, 10, 11, 12, and 25.

▬▬▬ Later, the State offered three color photographs, Exhibits 78, 85, and 88, taken at the autopsy. Defendant objected to these photographs as being cumulative and inflammatory. The main thrust of appellant's objection centered around Exhibit 85, which was a photograph of the victim's pelvic area. In response to appellant's objection, the prosecutor stated to the court that Exhibit 85 indicated gunshot wounds to the pelvic area of the victim and that this evidence would be relative to the prosecutor's final argument as to his theory of the motive for the shooting as demonstrated by the evidence. Following this statement by the prosecutor, the court admitted the exhibits in evidence.

Appellant now claims that the prosecutor misrepresented his final argument to the judge in that he did not mention Exhibit 85 in his final argument; however, we cannot agree with appellant in this regard. It is true the prosecutor did not refer to the exhibit as Exhibit 85. However, he did refer to the injuries suffered by the victim as shown by the exhibit. During the trial, appellant had claimed that he was on a government mission and that he was there to kill Curry. The prosecutor argued to the jury that the single shot to the head had killed Curry and that the subsequent shots fired by appellant into her prone body demonstrated a personal animosity toward her and not a methodical execution as appellant claimed.

The prosecutor pointed out that the subsequent shots fired indicated "a clear case of overkill. It's a case of shooting someone to hurt them and to punish them in an act of anger, not just an act of killing someone unemotionally." During the trial, Dr. Swaim, the doctor who had performed the autopsy, described the wounds which the victim had incurred. She testified that the bullets which entered Curry's buttocks exited through her pelvic area. This photograph, of course, was illustrative of her testimony and thus was admissible. *Green v. State* (1992), Ind., 587 N.E.2d 1314. Although the prosecutor did not refer to the exhibit by its number, he was obviously referring to it, along with the other exhibits, to demonstrate his theory concerning appellant's testimony of a methodical execution. The prosecutor did not make any misrepresentation to the trial court as to his planned use of the exhibits. We find no error here.

Appellant claims the trial court erred in finding him competent to stand trial. The trial court had appointed Dr. Mehta and Dr. Cerra to examine appellant both as to his defense of insanity and as to his competency to stand trial. Dr. Mehta testified that he was of the opinion that appellant was incompetent to stand trial. Dr. Cerra testified that in his opinion appellant was competent to stand trial; thus, the trial court had a conflict of evidence upon which to make its decision under the provisions of Ind.Code § 35–36–3–1(b).

■ This Court will review such a decision only for an abuse of the trial court's discretion. *Adams v. State* (1987), Ind., 509 N.E.2d 812. Where there is a conflict of the evidence submitted by the physicians, this Court generally will not overturn the trial court's determination as long as reasonable grounds exist to support it. *Id.; Bramley v. State* (1989), Ind., 543 N.E.2d 629.

■ Subsequently, the doctors were asked to testify concerning their opinions as to whether appellant was insane at the time he committed the offense. Dr. Mehta testified that in his opinion appellant had the capacity to understand the nature of his act; thus, he could not meet the standard of not guilty by reason of insanity. Dr. Cerra testified that

in his opinion appellant could not appreciate the wrongfulness of his act at the time it was committed. Again, the trial court and the jury were faced with a conflict in the evidence, which as above stated, this Court will not reweigh. The verdict of the jury was not contrary to law as claimed by appellant but was supported by the evidence submitted to them. Their verdict of guilty but mentally ill is provided for in Ind.Code § 35–36–2–3(4).

Appellant contends the trial court erred in giving him the maximum sentence of sixty (60) years. Appellant claims the trial court was not justified in finding among the aggravating circumstances that after having first shot the victim appellant continued to fire shots into her prone body until his gun was empty. Appellant takes the position that since a shot fired into the victim's head while she was still standing may have killed her almost instantly the court was not justified in finding the firing of additional shots into her body as aggravating circumstances. He also takes issue with the statement of the trial judge that appellant "recklessly fired a bullet through the window of the mini-mart, endangering others that were outside the building."

■ Appellant takes the position that the shot which went through the window was probably the same shot that went through the cheek of the victim. He cites the prosecutor as presenting such a theory in his final argument. As pointed out by the State, whether the shot was fired directly through the window or whether it was a bullet that passed through the victim and then exited the window, does not gainsay the fact that it was an act of reckless disregard by appellant of persons who might have been in the line of fire.

■ Appellant also takes exception to the trial court's finding that he showed no remorse for what he had done. Appellant takes the position that because the jury had recognized that he was mentally ill, it was erroneous for the court to use the lack of remorse as an aggravator. Lack of remorse is a valid aggravating factor. *Dinger v. State* (1989), Ind., 540 N.E.2d 39. Inasmuch as there was a conflict of evidence as to appel-

lant's sanity at the time of the offense and as to his ability to stand trial, both of which were decided against appellant, the court did not err in finding the lack of remorse as an aggravating factor. Under the statute permitting the jury to find a defendant guilty but mentally ill, it is the obvious intent of the legislature that the "mental illness" is not of such severity as to excuse the defendant for his acts in committing the crime. It thus follows that such a finding would not excuse a defendant for his failure to have remorse for his actions.

■ Appellant also claims the court erred in finding that an imposition of a reduced sentence would depreciate the seriousness of the crime. He contends this is merely a recitation of a statutory ground, thus not sufficient under *Totten v. State* (1985), Ind., 486 N.E.2d 519. We have held previously that such a factor does not contemplate aggravating circumstances of the crime itself; therefore, it is not error for a trial court to recite the statutory factor. *White v. State* (1982), Ind., 433 N.E.2d 761.

■ Appellant claims the trial court erred in holding that "the defendant has a history of committing other dangerous acts with a gun, and it's likely he will commit other dangerous acts in the future." Appellant contends the trial court did not specify what dangerous acts he had committed. Appellant claims that his statement and testimony concerning other instances of the use of a gun would not qualify. He contends he took a pistol with him to the Indiana Vocational Technical College and that he shot a rifle at an indoor range. Appellant claims that these are not against the law or dangerous acts. However, as pointed out by the State, there was evidence presented that on several occasions appellant had taken a pistol and fired shots at roadsigns and business signs in the Clinton area. It was proper for the trial court to take into consideration such actions when referring to appellant's "dangerous acts with a gun." *See Tunstill v. State* (1991), Ind., 568 N.E.2d 539.

■ Appellant also claims the trial court erred in failing to take into consideration several mitigating factors. Appellant con-

cedes that a trial court is not obligated to explain its choice not to find mitigation. *Avance v. State* (1991), Ind., 567 N.E.2d 1149. However, he contends the trial judge may not ignore facts in the record which would mitigate the offense, citing *Dockery v. State* (1987), Ind.App., 504 N.E.2d 291. He claims that failure to find mitigating circumstances when they are clearly supported by the record may imply they were overlooked and not properly considered. *Scheckel v. State* (1993), Ind., 620 N.E.2d 681.

■ Appellant cites *Christopher v. State* (1987), Ind., 511 N.E.2d 1019, wherein under very similar circumstances, this Court found that a defendant's problems caused by his mental illness, the fact he was seeking treatment, the fact that he did not display a devious frame of mind, and that he did not attempt to conceal his crime, were circumstances which were not given proper consideration for sentencing purposes; therefore, this Court reduced the sentence in that case. Although the case at bar has some factors parallel with *Christopher*, it has the additional factor from which the trial court could find that appellant deliberately killed the victim out of the motive of hatred because she had ordered him out of the business establishment on a previous occasion and that he had no remorse for doing so. We cannot find justification to reduce the sentence ordered by the trial court.

The trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, J., concur.

DeBRULER, J., concurs and dissents without separate opinion,

DICKSON, J., dissents without separate opinion.